WILMOT L. MOREHOUSE, Respondent, *v.* THE BROOKLYN HEIGHTS RAILROAD COMPANY, Appellant, Impleaded with Another.

1. ATTORNEY AND CLIENT — AGREEMENT THAT ATTORNEY SHOULD HAVE CERTAIN PERCENTAGE OF RECOVERY FOR HIS SERVICES — SETTLEMENT BETWEEN CLIENT AND DEFENDANT — ATTORNEY'S ACTION AGAINST DEFENDANT FOR HIS FEES. Where the plaintiff in an action against a railroad company for personal injuries, who had agreed to pay his attorney for his services fifty per cent of whatever might be recovered by way of settlement or otherwise, settled with the company, which paid the plaintiff the full amount agreed upon with the understanding

that he would settle with his attorney for the services rendered, and the attorney brought a suit against the company and his client for fifty per cent of the amount paid to the client, and the company interposed a defense that the contract was unconscionable, and, therefore, illegal and void, and upon the trial of the cause, without a jury, introduced evidence tending to establish such defense, and the trial court rendered a decision finding as a fact that the settlement was honest and binding upon the attorney, but that the attorney, at the time of commencing the action for personal injuries for his client had also served upon the company a notice of his lien for fifty per cent of the recovery, but made no finding either way upon the question as to whether the contract was unconscionable, illegal and void, and awarded judgment in favor of the attorney for fifty per cent of the amount paid to his client, with the provision that the execution first issue against the client, and if it should be returned unsatisfied, then the attorney should have execution against the company, such decision is erroneous, since the defense interposed by the company should have been determined one way or the other; the company had become, in effect, a surety that the client would settle with his attorney and was thereby subrogated to his rights, so that it had the right to avail itself of any defense that the client had.

2. AGREEMENT THAT ATTORNEY SHOULD HAVE FIFTY PER CENT OF RECOVERY FOR HIS SERVICES IN AN ACTION — WHETHER SUCH AGREEMENT IS UNCONSCIONABLE AND, THEREFORE, ILLEGAL AND VOID IS A QUESTION OF FACT. Whether a contract to pay an attorney for his services in prosecuting an action fifty per cent of the amount recovered is unreasonable and unconscionable is a question of fact depending upon the character of the claim and the amount of services to be rendered in prosecuting it to judgment; the mere fact that the attorney under such agreement was to receive one-half does not render it unconscionable, unless it appears from the evidence that it was induced by fraud, or, in view of the nature of the claim, that the compensation provided for was so excessive as to evince a purpose on the part of the attorney to obtain an improper or undue advantage over his client.

3. WHEN REFUSAL TO MAKE FINDINGS AS REQUESTED NOT EQUIVALENT TO FINDING TO THE CONTRARY — MISTRIAL FOR FAILURE OF COURT TO MAKE FINDING UPON QUESTION AT ISSUE. The fact that the trial court wrote the word "refused" upon the margin of the requests to find, submitted by the company, to the effect that the contract was unconscionable, does not constitute a finding that the contract was not unconscionable, since a refusal to find a fact requested is not equivalent to an affirmative finding to the contrary; therefore, the failure of the trial court to find upon the issue, raised by the pleadings and the evidence given upon the trial, resulted in a mistrial.

*Morehouse* v. *Brooklyn Heights R. R. Co.*, 102 App. Div. 627, reversed.

(Submitted May 15, 1906; decided June 21, 1906.)

APPEAL from a judgment of the Appellate Division of the Supreme Court in the second judicial department, entered March 27, 1905, affirming a judgment in favor of plaintiff entered upon a decision of the court on trial at Special Term.

*George D. Yeomans* and *Charles L. Woody* for appellant. In no event was the plaintiff entitled to recover anything in this action more than the reasonable value of his services rendered to the defendant Nathan in the suit he instituted for Nathan against the Brooklyn Heights Railroad Company, which was settled. (*Rogers* v. *P. Inst. of Bklyn.*, 87 App. Div. 81; *Yuengling* v. *Betz*, 58 App. Div. 8; *Matter of Mitchell*, 57 App. Div. 22; *Badjer* v. *Majer*, 2 Misc. Rep. 534; *Carley* v. *Grant*, 59 Barb. 576; *Dolan* v. *Rogers*, 149 N. Y. 489; 2 Pars. on Cont. [8th ed.] 523, 640; *Schoellkopf* v. *Coatsworth*, 166 N. Y. 84; *Russell* v. *Allerton*, 108 N. Y. 288; *Wright* v. *Reusens*, 133 N. Y. 298, 305; *Jugla* v. *Trouttet*, 120 N. Y. 21.)

*Wilmot L. Morehouse*, respondent, in person.   The contract of retainer between the respondent and Nathan was lawful and should be upheld. (*Matter of Fitzsimons*, 174 N. Y. 15; *Fischer-Hansen* v. *B. H. R. R. Co.*, 173 N. Y. 492; *Fenwick* v. *M. S. Ry. Co.*, 173 N. Y. 633; *Matter of Regan*, 167 N. Y. 338; *Whittaker* v. *Railroad*, 3 N. Y. S. R. 537; *Keeler* v. *Keeler*, 21 N. Y. S. R. 666; *Peri* v. *Railroad*, 152 N. Y. 521.)

HAIGHT, J.  This action was brought to recover of the defendant Jonas Nathan for services rendered to him by the plaintiff as an attorney at law in the commencement of an action for Nathan against the Brooklyn Heights Railroad Company, and to enforce plaintiff's lien against the railroad company.

On the 19th day of February, 1902, the defendant Nathan received personal injuries on the defendant's railroad while a passenger in one of its cars, and thereupon he entered into a written agreement with the plaintiff to prosecute an action

therefor, for which he agreed to pay the plaintiff fifty per cent of whatever might be recovered in the action, by way of settlement or otherwise, together with the costs, allowances and disbursements thereon as compensation for his services. Shortly thereafter the plaintiff did bring an action against the railroad company by the service of a summons and complaint, which action was subsequently settled by the defendant Nathan, the railroad company paying to him the sum of $2,000. The trial court has found as a fact that the settlement so made by the railroad company was honest and binding upon the plaintiff, but that the plaintiff at the time of serving the summons and complaint had also served upon the railroad company a notice of his lien for fifty per cent. Judgment was thereupon awarded against the defendant for the sum of $1,000, with the provision that execution first issue against the defendant Nathan, and if it should be returned unsatisfied, then the plaintiff have execution against the defendant railroad company. The defense interposed by the railroad company was that the contract between Nathan and the plaintiff was unconscionable, and, therefore, illegal and void. Most of the evidence taken upon the trial bore upon this issue. At the conclusion of the evidence the trial court rendered a decision in writing, containing findings of fact and conclusions of law to which reference has already been made, but containing no finding either way upon the question as to whether the contract was unconscionable and illegal and void. The defendant had submitted requests to find bearing upon this issue, to the effect that the contract was unconscionable, which requests were marked "refused." In disposing of the case the trial judge filed his opinion in which he stated that the claim of the defendant that the contract was unconscionable and would not, therefore, be enforced by the court was not available to the defendant railroad company, for the reason that if the company still had the $2,000 in its possession it could not raise such a question, as it would be a matter between the attorney and client only, and he did not think the company was in any better position after having paid the

money in its own wrong. Exceptions were taken to the findings of fact and conclusions of law of the trial court, and to its refusals to find as requested.

I think the defense interposed by the defendant company was available to it, and that it should have been determined either one way or the other by the trial court. It is true the defendant company paid out its $2,000 in settlement of the action brought against it, but this, as the trial justice has found, was honestly done, and consequently was not for the purpose of defrauding the plaintiff out of his compensation. It is true that this payment was made after notice of the lien had been served by the plaintiff upon the company. How the company came to make the payment after such notice is not disclosed by the record. Whether it was overlooked or forgotten, we are not advised. The company, however, has honestly settled the case and paid the money to Nathan, as it had the right to do, upon the understanding that he would settle with his attorney for the services he had received. (*Fischer-Hansen* v. *Brooklyn H. R. R. Co.*, 173 N.Y. 492.) Nathan thereby became primarily liable to pay the plaintiff herein for his services in the litigation, and the defendant company only became liable to pay in case collection through execution against Nathan could not be made. In effect it became his surety. Such is the judgment entered herein. It, therefore, appears to me that the defendant company became subrogated to the rights of the defendant Nathan, and had the right to avail itself of any defense to the action that Nathan had. In the case of *Pease* v. *Egan* (131 N. Y. 262–272), PECKHAM, J., in commenting upon the general rule of subrogation, refers to a statement of Chief Justice MARSHALL, to the effect "that equity would clothe the party thus paying with the legal garb with which the contract he has discharged was invested, and it would substitute the party paying to *every* equitable interest and purpose, in the place of the creditor whose debt he has discharged." And again later on, after referring to the cases of *Gans* v. *Thieme* (93 N. Y. 225) and *Arnold* v. *Green* (116 N. Y. 566), says

with reference to them that they are "evidences of the rule that no contract need subsist upon which to base the right of subrogation, and that it is a remedy which equity seizes upon in order to accomplish what is just and fair between the parties." In *Mathews* v. *Aikin* (1 N. Y. 595) Johnson, J., says: "It is a general and well-established principle of equity that a surety, or a party who stands in the situation of a surety, is entitled to be subrogated to all the rights and *remedies* of the creditor whose debt he is compelled to pay." (*Hinckley* v. *Kreitz*, 58 N. Y. 583; *Johnson* v. *Zink*, 51 N. Y. 333; *Lord* v. *Tiffany*, 98 N. Y. 412; *Wheeler* v. *Sweet*, 137 N. Y. 435.)

Of late years the subject of attorneys' fees and their manner of procuring contracts of retainer, especially in negligence cases, have attracted the attention of both the public and the courts. The charges made in some cases have been exorbitant, if not scandalous, and have tended in a measure to bring the profession into disrepute. It is contended that a claimant who is poor and unable to pay his attorney in cash ought to be permitted to contract to pay a portion of his claim to his attorney, in order to procure his services. The validity of such contracts is not questioned. It is only where the attorney has taken advantage of the claimant, by reason of his poverty or the surrounding circumstances, to extort an unreasonable and unconscionable proportion of such claim that it is condemned. The Federal courts have recently, in two instances, characterized a contract of retainer giving to the attorney fifty per cent of the recovery as unconscionable. (*Herman* v. *Met. St. Ry. Co.*, 121 Fed. Rep. 184; *Muller* v. *Kelly*, 125 Fed. Rep. 213.) The Appellate Division in the first department has also denounced such contracts. The question, however, as to whether such a contract is unconscionable is one of fact depending upon the character of the claim and the amount of services to be rendered in prosecuting it to judgment. An agreement to pay an attorney one-half of the recovery where the action was to recover a penalty of fifty dollars would not by any person be considered to be improper, but if it was for fifty thousand dollars it might be considered

quite improper.   So that the mere fact that the attorney
under the agreement was to receive one-half does not render it
unconscionable, unless it appears from the evidence that it was
induced by fraud, or, in view of the nature of the claim, that
the compensation provided for was so excessive as to evince a
purpose on the part of the attorney to obtain an improper
or undue advantage over his client.   (*Matter of Fitzsimons*,
174 N. Y. 15.)   As we have seen, the defendant in the case
under consideration interposed the defense that the contract
in this case was unconscionable and, therefore, void, and that
evidence was produced upon the trial bearing upon this
defense.   The defendant company, therefore, had the right
to have that issue determined by the trial court.   This, as we
have seen, the trial judge refused to do, for the reason, as he
states in his opinion, that the defense was not available to it.
It is suggested, however, that the opinion cannot be consid-
ered in determining the effect that should be given to the
refusal to find the defendant's requests, and that the refusal
should be construed as a determination on the part of the
trial court of the issues so presented for its decision.   While
we require the opinions written to be printed and made a
part of the record, they do not form a part of the judgment
roll.   We do not, therefore, look to the opinions for the pur-
pose of determining the contents of an order, finding, or
judgment; or its meaning.   We only examine the opinions
for the purpose of ascertaining the arguments made and the
reasons given in support of the rulings and determinations
made by the court whose order or judgment is under review.
(*Salmon* v. *Gedney*, 75 N. Y. 479–481; *Tilton* v. *Beecher*,
59 N. Y. 176–182; *Fisher* v. *Gould*, 81 N. Y. 228; *Dibble*
v. *Dimick*, 143 N. Y. 549–554; *Koehler* v. *Hughes*, 148
N. Y. 507.)   Under the practice as it existed prior to 1894,
a party could submit to the trial court, or referee, requests to
find, and the court or referee was empowered to mark upon
the margin his determination as to each request.   This he
either filed or returned to the attorney presenting the request,
and such attorney might file an exception to any refusal to find

as requested and present the same for review before an appellate tribunal. But the provision of section 1023 of the Code of Civil Procedure authorizing this practice was repealed in the year stated and was not re-enacted to take effect until September 1st, 1904. So that in the meantime there was no provision of the Code authorizing requests to find, or requiring the court to pass thereon, or of allowing parties to take exceptions to refusals as requested. The requests to find in this case were presented during this interval, and it consequently follows that the court was not required to make any of the findings requested. But it is said that the trial court did pass upon the requests by refusing them. Very true, he marked them all "refused." Why he refused them he did not state. He properly could have refused them for the reason that the requests were not authorized by the Code, and the rulings made thereon had no force or effect, inasmuch as they were not subject to an exception or to a review on appeal. But assume that the provisions of section 1023 of the Code had been re-enacted and were in force, and that an exception could be taken to the rulings made upon request, and that such exception could be reviewed on appeal. Even then a refusal to find a fact requested is not equivalent to an affirmative finding to the contrary. If it were, a judgment might be based upon a decision made up wholly of refusals, thus completely nullifying the plain provisions of section 1022 of the Code, which require that the decision must state separately the facts and the conclusions of law and direct the judgment to be entered thereon. A judgment, therefore, must be based upon facts found, not facts refused. This precise question was considered by this court in the case of *Galle* v. *Tode* (148 N. Y. 270–277). The opinion is as follows: "It is contended on behalf of the respondents that the defendants Levi and Materne were parties and privies to the fraudulent intent of Tode and Wulling. There is, however, no direct finding to that effect. A finding was requested that the defendants Levi and Materne had no knowledge of the intent of Tode and Wulling to defraud their creditors and

the request was refused. *But the refusal to find a fact is not tantamount to a finding against a fact, unless the intention of the court to be so understood is clearly apparent.* The refusal to find may rest upon other considerations; the evidence may not be regarded as satisfactory either for or against, or the mere fact may not be regarded as material in the determination of the controversy." In the case of *Meyer* v. *Amidon* (45 N. Y. 169–171) the action was founded upon fraud and deceit. The referee had found that the representations made by the defendant were false, that the plaintiffs were induced thereby to give credit, and that damages ensued therefrom. He did not find that the representations were fraudulent, nor that the defendant believed or had reason to believe when he made them that they were false, nor that he assumed or intended to carry the impression that he had actual knowledge of their truth. He did not find that the defendant had any intent to deceive or defraud the plaintiffs. The defendant requested the referee to find that the representations were made without fraud. The referee refused so to find otherwise than as contained in his findings of fact. It was held that the findings did not establish a cause of action against the defendant, nor sustain the conclusions of law found by the referee; that the refusal of the referee to find that the representations were made without fraud and without intent to deceive, would not be equivalent to a finding that they were made with fraud and intent to deceive. (See, also, *Lawrenceville Cement Co.* v *Parker*, 39 N. Y. S. R. 864.) I am, therefore, of the opinion that the failure of the trial court to find upon the issue so raised by the pleadings and the evidence given upon the trial, resulted in a mistrial. (*Miller* v. *N. Y. & North Shore Ry. Co.*, 183 N. Y. 123; *Dougherty* v. *Lion Fire Ins. Co.*, 183 N. Y. 302.)

The judgment should be reversed and a new trial granted, with costs to abide the event.

Cullen, Ch. J., O'Brien, Edward T. Bartlett, Hiscock and Chase, JJ., concur; Gray, J., absent.

Judgment reversed, etc.