In the Matter of the Application of WILLIAM REISFELD and GUSTAVE A. CYMBERG, Copartners Doing Business under the Firm Name of REISFELD & CYMBERG, Appellants,. to Enforce an Attorney's Lien.

MORRIS NACHT, as Administrator, etc., of MAX NACHT, Deceased, Plaintiff, *v.* THE NATHAN MANUFACTURING Co., INC., Defendant, Respondent.

First Department, April 4, 1919.

Attorney and client — proceeding to determine and enforce lien under section 475 of Judiciary Law — settlement by client without notice to attorneys after commencement of action — validity of contingent retainer — agreement of retainer signed by client as individual and not as administrator — facts not constituting discharge of attorneys by client.

Where attorneys, duly retained by a written agreement under which they are to receive fifty per cent of any settlement or recovery in an action for negligence, institute the action in which the defendant appears, and

thereafter the defendant and an insurance company, with knowledge of the lien of said attorneys and without notice to them, settled the action, said attorneys are entitled to have their lien determined and enforced pursuant to section 475 of the Judiciary Law.

A contingent retainer in a negligence case, under which the attorneys are to receive fifty per cent of any settlement or recovery for their services, is legal.

A written agreement by a father, retaining attorneys to maintain an action to recover for the death of his son, is not rendered invalid because executed by him as an individual and not as administrator, as the action is for the benefit of the father who is the next of kin.

The fact that a client, after accepting the benefit of the services of attorneys under a written retainer in procuring his appointment as administrator, and in instituting an action in his behalf, consented to have a firm of attorneys, paid by an insurance company, conduct proceedings authorizing a settlement, without knowledge to said attorneys, does not effect their discharge.

DOWLING, J., dissented, with opinion.

APPEAL by William Reisfeld and another from an order of the Supreme Court, made at the New York Special Term and entered in the office of the clerk of the county of New York on the 13th day of January, 1919, granting their motion to ascertain and foreclose their attorneys' lien herein, but fixing the same at the sum of only $150.

*Isidor Enselman* of counsel [*John G. Dyer*, attorney], for the appellants.

*Henry Bogert Clark* of counsel [*Paul J. McCauley* with him on the brief; *Amos H. Stephens*, attorney], for the respondent.

SHEARN, J.:

This is a special proceeding instituted by the attorneys for the plaintiff to determine and enforce their lien pursuant to section 475 of the Judiciary Law (Consol. Laws, chap. 30; Laws of 1909, chap. 35), the action having been settled behind the backs of the attorneys by a corporation which had insured the defendant against liability.

On October 29, 1918, Morris Nacht, whose son had been killed by the negligence of the defendant, retained the petitioners to institute and maintain legal proceedings to recover damages for the death of his son and agreed to pay the petitioners for their services fifty per cent of any settle-

ment or recovery had in such proceedings, and on the same day the petitioners notified the defendant in writing that they had been retained and intended to institute suit unless the matter was settled.   On October 31, 1918, a representative of the Travelers Insurance Company informed the petitioners that his company had insured the defendant and requested that no further proceedings be taken pending investigation, stating that as soon as the investigation was completed he would take up the case with the petitioners with a view of adjustment.   On November 2, 1918, the petitioners procured letters of administration to be duly issued to Morris Nacht, and an action was commenced against defendant on that day by the service of a summons.   The defendant subsequently appeared in the action.   On November 8, 1918, the insurance company negotiated a settlement of the case without notice to the petitioners, and on November 15, 1918, an order was entered authorizing the settlement for $1,100, of which $100 was for attorneys' fees.   The proceedings authorizing the settlement were conducted by attorneys who were admittedly paid by the insurance company.   Thereupon these proceedings were begun and an order entered adjudging that the petitioners have a lien upon the cause of action.   The learned justice at Special Term, however, disregarded the provision of the written agreement of retainer, which fixed the attorneys' compensation at fifty per cent of the settlement, and limited their lien " to the extent of the reasonable value of the services rendered by the petitioners up to the time of the settlement of the cause of action herein," which he fixed summarily at $150.

Upon the motion an attempt was made to show that the plaintiff did not know the character and provisions of the retainer agreement when he signed it.   Nothing but hearsay was adduced to support this charge, and no affidavit of the plaintiff was submitted to establish it.   On the other hand, the petitioners filed an affidavit of the brother of the plaintiff, a physician, and an affidavit of the sister-in-law of the plaintiff, which tended strongly to show that the charge, made against the attorneys on hearsay, was unfounded.   The justice at Special Term must have found that the claim of deception was unproved, for, otherwise, he would have disallowed any

First Department, April, 1919.          [Vol. 187.

lien. Whatever one's views may be of these fifty per cent contingent retainer agreements in negligence cases, their legality has been settled. (*Morehouse* v. *Brooklyn Heights Railroad Co.*, 185 N. Y. 520; *Matter of Weber*, 102 Misc. Rep. 635.) Both the defendant and insurance company knew that the petitioners had a lien upon the cause of action for their services. The mere fact that they did not know the amount of the lien did not permit them to disregard the lien. When they effected a settlement, with full knowledge of the existence of a lien, it was incumbent upon them to ascertain the amount of the lien. Knowing that there was a lien, they could not avoid it simply by refusing to ascertain its amount.

Two grounds are advanced in support of the court's action in disregarding the written agreement of retainer. One is that it was executed by Morris Nacht as an individual and not as administrator. I can find no substance in this claim, for the action is for the benefit of the next of kin, that is, the father, Morris Nacht, who executed the contract. It is next contended that the petitioners could not enforce their retainer agreement if they were discharged by their client (*Martin* v. *Camp*, 219 N. Y. 170), and that the petitioners were discharged. The only evidence of a discharge consists of the fact that the plaintiff, who was apparently willing to cheat his attorneys out of their agreed fee, after accepting the benefit of their services in procuring his appointment as administrator and in instituting an action in his behalf and investigating his right to recover, consented to have a firm of attorneys, paid by the insurance company, conduct the proceedings in the Surrogate's Court authorizing the settlement. The plaintiff never informed the petitioners that they were discharged and the petitioners had no knowledge that their services were no longer required until the case was settled. I do not see how this can be seriously claimed to amount to a discharge and have the effect of nullifying a legal binding contract.

We have, therefore, a situation where (1) the petitioners were duly retained under a written agreement; (2) the petitioners performed services pursuant to the agreement; (3) by the Judiciary Law the petitioners had a valid lien upon the cause of action to the extent provided in the agreement;

(4) the defendant and the insurance company had actual notice that the petitioners had a lien upon the cause of action, and (5) with such knowledge the action was settled without the petitioners' knowledge and while they were still acting as the plaintiff's attorneys. Under these circumstances, unless the plain provisions of the law are to be disregarded, I do not see any justification for refusing to secure the petitioners their lien.

The order should be modified by determining and establishing the petitioners' lien at five hundred dollars, and directing the defendant to pay the same, together with ten dollars costs of the motion, and, as modified, the order should be affirmed, with ten dollars costs and disbursements to the appellants.

CLARKE, P. J., SMITH and PAGE, JJ., concurred, DOWLING, J., dissented.

DOWLING, J. (dissenting):

The petitioners herein are attorneys and seek to have their lien as such ascertained and foreclosed against the Nathan Manufacturing Company and Morris Nacht. In support of their petition it is alleged that they were duly retained by Morris Nacht on October 29, 1918, to institute an action to recover damages for personal injuries resulting in the death of his son, Max Nacht, as the result of being run over by an automobile truck belonging to the Nathan Manufacturing Company.

It is alleged that a written retainer was executed whereby Nacht agreed to pay the attorneys fifty per cent of any settlement, verdict or recovery had in the action. Morris Nacht, as the sole surviving heir at law and next of kin, was appointed as administrator of the deceased son, Max. The facts attending the retainer of the attorneys are set forth, culminating in the written retainer, which the petitioners offer to submit to the court upon the return of the motion.

The services performed by the petitioners are shown by them to have commenced by the preparation of the application for Morris Nacht's appointment as administrator of his son's estate, which application was filed and letters were issued thereunder. The attorneys also wrote a letter to the Nathan

First Department, April, 1919. [Vol. 187.

Manufacturing Company, advising it that they had been retained by Morris Nacht to institute suit. Thereafter the summons was served on the defendant. Between the writing of the letter and the service of the summons, a representative of the Travelers Insurance Company, which had insured the defendant, requested that no further proceedings be taken as an investigation was being made in the matter, upon the completion of which the question would be taken up with the petitioners for adjustment. The petitioners, however, did not comply with this request, but served a summons on the Nathan Manufacturing Company, after the receipt of which the said Nathan Manufacturing Company, by its attorney, served a notice of appearance in this action upon petitioners.

Thereafter, the plaintiff and the defendant in the action, without notice to the petitioners, agreed upon a settlement by which the Nathan Manufacturing Company was to pay Morris Nacht $1,140 as damages for his son's death. It is averred that on that settlement no provision was made for any payment to these attorneys, and the full amount thereof has been paid to Morris Nacht, who is now irresponsible and cannot be made to pay the petitioners the amount of their lien.

There is an allegation that at the time of the making of the settlement the Nathan Manufacturing Company had actual knowledge and notice of petitioners' lien. The affidavits of Felix Nacht and Jennie Nacht are intended to show that the petitioners had in fact been retained by Morris Nacht.

In opposition, there are affidavits tending to show that if Nacht ever signed the retainer, it was in ignorance of its contents and that he was induced to sign the same believing they were ." papers " for his appointment as administrator. It is also averred in these answering affidavits that Nacht retained the firm of Cullom & Rinke as his attorneys on or about November 7, 1918, repudiating any retainer of the petitioners, and that Nacht at that time assured Cullom & Rinke that his professional relations with the petitioners were at an end.

The settlement was arranged through Cullom & Rinke, as attorneys for Nacht, with the Nathan Manufacturing Company, for the sum of $1,140, and after deducting expenses of

$100, presumably to pay for said attorneys' services, the remainder was to be equally divided between the father and the mother of the deceased. There is an affidavit made upon this settlement by Morris Nacht that he never desired or intended to retain petitioners as his counsel in this matter and that he retained no counsel other than Cullom & Rinke.

While the petitioners do not produce their retainer or the written agreement of retainer, there is no denial that such a paper was in fact signed, although Nacht claims not to have appreciated its purport and effect. It is also to be noted that there is no denial by the Nathan Manufacturing Company that at the time of making the settlement it had actual knowledge and notice of the petitioners' lien.

There is no attack made upon the good faith and integrity of the petitioners, nor can they be accused of neglect of their client's interests. This appears to be simply a case of a client being willing to compromise a claim as speedily as possible, provided he obtained what he thought was a satisfactory settlement, and paying no attention to the rights of his attorneys in so doing. And yet, under the doctrine of *Martin* v. *Camp* (219 N. Y. 174) a client may discharge his attorney arbitrarily, without any cause, at any time, and the attorney can then recover only the reasonable value of the services which he has rendered.

I think, from the facts shown by the affidavits, it is clear that Nacht had in fact discharged the petitioners as his attorneys on November 7, 1918. This being so, they have a lien only for the reasonable value of their services up to that date. The court has found, as appears from the recital in the order, that the only services performed by the petitioners for the plaintiff were the preparation of the application for the appointment of Nacht as administrator of his son's estate, the preparation and service of the summons and the receipt from the attorney for the defendant of a notice of appearance. Upon these services the court has fixed a value of $150. If these were the only services performed by the petitioners, it would seem as though, upon the case as disclosed by the moving papers, the allowance was a fair one.

As the petitioners have stood upon their right to one-half of the recovery, they have not, at Special Term, sought to

have the value of their services fixed.  It seems to me, however, that the statement of their services as enumerated in the order covers all that their affidavits show they claim to have done, and the amount granted therefor is fair compensation for such services.  I believe, therefore, that the order appealed from should be affirmed, without costs.

Order modified as directed in opinion and as so modified affirmed, with ten dollars costs and disbursements to appellants.