Van Voorhis, J.
(dissenting). The law underlying the opinion by Judge Dye, in which I concur, and the unanimous decision by the Appellate Division affirming the Special Term, appears to me to be clear and well established. In the language of this court, “ Notwithstanding the fact that the employment of an attorney by a client is governed by the contract which the parties make, the peculiar relation of trust and confidence that such a relationship implies injects into the contract certain special and unique features ” (Martin v. Camp, 219 N. Y. 170, 173).
In Matter of Dunn (205 N. Y. 398, 401-402), this court said: “ That the relationship between attorney and client is one of an unusual character has been so often affirmed that a statement of the proposition is commonplace. There lie at its foundation the elements of trust and confidence on the part of the client and *644 of undivided loyalty and devotion on the part of the attorney which render the relationship a personal and confidential one and make its obligations on the part of the attorney of the most exacting kind.”
In Ransom v. Ransom (147 App. Div. 835, 845), the First Department said at page 848:
* ‘ It is not claimed that the agreement in question is restrained by any provisions of the statute law, but that the interest assigned being disproportionate to the services rendered which formed the consideration for its execution, the court has power to modify or annul it. The relation of attorney and client is one which creates a degree of trust and confidence upon the part of the latter in the former which is only natural and necessary, and of which no attorney should be permitted to avail himself to his profit and to the client’s loss.[1]
‘ ‘ The attorney is an officer of the court * * *. Hence it cannot be said, even in view of the plain phraseology of the Code section, that the court is without power to inquire into the good faith of an agreement between attorney and client, even if reduced to writing.”
In the Ransom case, the language of Justice Nathan L. Miller, as he then was, is quoted from McCoy v. Gas Engine & Power Co. (135 App. Div. 771, 772-773): “ The word ‘ unconscionable ’ has frequently been applied to contracts made by lawyers for what were deemed exorbitant contingent fees. But by that nothing more has been meant than that the amount of the fee, standing alone and unexplained, may be sufficient to show that an unfair advantage was taken of the client or, in other words, that a legal fraud was perpetrated upon him. (Morehouse v. Brooklyn Heights R. R. Co., 185 N. Y. 520.) ’ ’ (Italics supplied.)
Matter of Friedman (136 App. Div. 750, affd. 199 N. Y. 537) was likewise cited in Ransom v. Ransom (supra), where a contract for 50% of a recovery in an accident case was held to be not fraudulent per se in all instances, but the court added (136 App. Div. 751-752): “ But the recovery may be such that what was in the first instance a fair contract becomes unfair in its enforcement. * * * The expert lawyer who wins his case without error and without repeated appeals, and makes return to his client with the greater promptness, should not be mulcted *645 in his compensation because he has not exposed his client to harassing and protracted litigation. And so much the more, if his policy and capacity insures swift payment without litigation, should he be approved for merit rather than penalized for his facility. Nevertheless the recovery may he such that the lawyer’s retention of it would he unjustified and toould expose him to the reproach of oppression and overreaching. He is an officer of the court and is judged as such, and technical contractual rights must yield to his duty as such officer. O’Neill recognized his relation by refusing final settlement without the court’s approval, and the court, entertaining the application, has fixed the sum which appears to it suitable. The court was not bound by the stipulated further advance of $550. Its duty was not perfunctory. It has allowed one-quarter of the recovery and some disbursements, and as the appellant invoked its interposition he cannot object to its fixing some amount.”[2] (Italics supplied.)
The Appellate Division made clear in the Friedman case, affirmed in this court, that it had the power notwithstanding the existence of an agreement between attorney and client, and although it made a conciliatory gesture in the lawyer’s direction by noting that he saw the handwriting on the wall by refusing final settlement without the court’s approval, nevertheless it was made plain that this was not necessary to the jurisdiction. The power of the court was recognized to apply the principle, where the recovery is so large, “ that what was in the first instance a fair contract becomes unfair in its enforcement.” Politeness in the exercise of judicial power is not equivalent to its renunciation.
One of the more recent expressions of this court upon this subject is the opinion by Judge Pound in Ward v. Orsini (243 N. Y. 123). There Mr. Hamilton Ward presented to this court for approval his contingent fee agreement in a case where he claimed the modest fee of $300, due to the settlement of an action by a client against the New York Central Railroad Company without his knowledge or consent. The reasonable value of the legal services of Mr. Ward, then one of the most eminent negli *646 gence trial lawyers in western New York, was easily $300. The opinion mentions (p. 129) that “ The defendant does not question the reasonableness of the fee.” In writing for a unanimous court, except that Judge Lehman did not sit, Judge Pound was careful to avoid setting a precedent for a case like the present. The opinion says (p. 128): “It may well be that in a supposed case the amount received by the client would be so completely out of proportion to the value of the attorney’s services that it would be unconscionable as matter of law to permit him to enforce his contract.” (Italics supplied.) That is this case.
Here, to be sure, it is not necessary to an affirmance to hold that the charge of $15,000 claimed by Ge Wertz is unconscionable as matter of law, although I believe it to be so; Special Term found GeWertz’ fee to be unconscionable in fact, as well as in law, in this special proceeding brought pursuant to section 475 of the Judiciary Law. This finding of fact has been unanimously affirmed by the Appellate Division.
The opinion in Ward v. Orsini (supra, p. 127) cites Morehouse v. Brooklyn Heights R. R. Co. (185 N. Y. 520, 525-526), where it was stated in the words of the Ward opinion “that the question was one of fact depending upon the character of the claim and the amount of services to be rendered in prosecuting it to judgment, and that the mere fact that the attorney under the agreement was to receive one-half does not render the agreement unconscionable, ‘ unless it appears from the evidence that it was induced by fraud, or, in view of the nature of the claim, that the compensation provided for was excessive so as to evince a purpose on the part of the attorney to obtain an improper or undue advantage over his client.’ ”
That is what has been found in the instant case; and it was in this context that Judge Pound’s opinion added that situations might arise where the abuse would be so flagrant that such an agreement should be held to be unconscionable as matter of law. In this case we need not consider that aspect as a question of law, inasmuch as it has already been decided as a question of fact beyond our power to review.
The opinion in the Morehouse case is prescient. It seems to have been written with a segment of the negligence Bar. of today in mind: “ Of late years the subject of attorneys’ fees and their manner of procuring contracts of retainer, especially in *647 negligence cases, have attracted the attention of both the public and the courts. The charges made in some cases have been exorbitant, if not scandalous, and have tended in a measure to bring the profession into disrepute. It is contended that a claimant who is poor and unable to pay his attorney in cash ought to be permitted to contract to pay a portion of his claim to his attorney, in order to procure his services. The validity of such contracts is not questioned. It is only where the attorney has taken advantage of the claimant, by reason of his poverty or the surrounding circumstances, to extort an unreasonable and unconscionable proportion of such claim that it is condemned. The Federal courts have recently, in two instances, characterized a contract of retainer giving to the attorney fifty per cent of the recovery as unconscionable. (Herman v. Met. St. Ry. Co., 121 Fed. Rep. 184; Muller v. Kelly, 125 Fed. Rep. 213.) The Appellate Division in the first department has also denounced such contracts. The question, however, as to whether such a contract is unconscionable is one of fact depending upon the character of the claim and the amount of services to be rendered in prosecuting it to judgment. An agreement to pay an attorney one-half of the recovery where the action was to recover a penalty of fifty dollars would not by any person be considered to be improper, but if it was for fifty thousand dollars it might be considered quite improper.” (185 N. Y. 520, 525-526.)
In the present case the amount paid in discharge of the claim was $75,000. It seems to me clear that this question is involved on this appeal. It is true, of course, that the 50% contingent fee agreement procured by GeWertz from the injured plaintiff’s wife while he was unconscious was (due to no concession by GeWertz) terminated by Wojcik who discharged him later. Although GeWertz’ claim was thereby reduced to a quantum meruit basis, nevertheless this court has said in other cases where this has occurred that “ the terms of the retainer contract, now at an end, may be taken into consideration in fixing the value of the lawyer’s services. (Matter of Tillman, 259 N. Y. 133; Matter of Montgomery, 272 N. Y. 523.) ” (Martucci v. Brooklyn Children’s Aid Soc., 284 N. Y. 408, 409.) So the original 50% agreement, although abrogated by the discharge of this attorney, was still in the offing when the substitution of attorneys took place. It is contrary to experience to assume that the parties were dealing at arms’ length when the agree *648 ment of substitution was made, even though the client (still unable to attend to business on account of his injuries) handled the matter through his new attorney Mathew Vener. Before anything further could be done with the lawsuit, they had to get rid of GeWertz, who occupied the strategic position of being attorney of record for the injured plaintiff with a signed 50% retainer agreement. He finally reduced his claim to 20% of the gross recovery as the price of his withdrawal, to recompense him for the few hours of actual labor on the case before plaintiff discharged him. The discrepancy between the real value of the legal services rendered by GeWertz and the $15,000 which he claims as his contingent fee is sufficiently great to sustain a determination that it is “ unconscionable ” within the definition phrased by Judge Miller, i.e.: “ sufficient to show that an unfair advantage was taken of the client or, in other words, that a legal fraud was perpetrated upon him.”
It is incorrect, I think, to hold that this was not at issue due to the circumstance that the settlement approved at Special Term by Mr. Justice Benjamin provided that the fee of GeWertz was to be paid out of the one third of the net recovery ($75,000 minus $9,215.23 to reimburse the workmen’s compensation insurance carrier) which Justice Benjamin deemed to be adequate compensation for both lawyers. The figure resulting from this computation is $21,928. Justice Benjamin awarded GeWertz one third of this $21,928 and he awarded to Vener (who accomplished the settlement) two thirds of this sum of $21,928. Thus it appears that the Special Term Justice fixed Vener’s fee in the sum of $14,618.67 and fixed GeWertz’ fee at $7,309.33, which GeWertz refuses to accept. If it were to be held that GeWertz has the legal right to $15,000 under his contract with the injured plaintiff, it would not reduce the reasonable value of Vener’s services and Vener would still be entitled to receive $14,618.67, if that be the reasonable value of his services. On the findings which have been made, reversal would thus cost Wojcik $7,690.67 more than he is obligated to pay under the existing order. If Wojcik bartered away his recovery to GeWertz without relation to the value of GeWertz’ legal services, it does not follow that Vener should or is committed to work for nothing or for less than his professional services were reasonably worth. The consequences of a reversal would have to be, as I view it, to expunge altogether what Justice *649 Benjamin did in Ms rulings on counsel fees, and to subject Wojcik (the injured plaintiff) to liability for additional counsel fees by payment to Vener for Ms services on quantum meruit. There is no agreement here or principle of law according to which Vener is to be paid less than the value of his services if Wojcik contracted to pay GeWertz more than his services were worth. No such stipulation as that was made by Vener in the text of the agreement of substitution of attorneys. The statement in this agreement that GeWertz is to be paid 20% of the gross recovery by the substituted attorney, Mathew Vener, Esq., does not signify that it is to be deducted from Vener’s own fee, the amount of which is not prescribed, but merely that Vener is to deduct 20% from the gross recovery and pay it directly to GeWertz without its passing through Wojcik’s hands. GeWertz drew this stipulation, and he evidently inserted this clause to protect himself. He was not restricting Vener’s fee. In other words, if GeWertz is not subject to supervision as an officer of the court by reason of section 474 of the Judiciary Law, and Wojcik is held to have contracted to pay more to GeWertz than he would otherwise have been entitled to receive, there is no principle of law nor any agreement in the record which would thereby make Vener the loser. It seems to me that Wojcik’s interest is directly involved upon this appeal and that the controversy is not merely between two attorneys. Victory by GeWertz would probably be followed by a new application by Vener, nor is there anything in the record which would prevent Vener from successfully prosecuting such an application. Point I of plaintiff’s brief would not preclude Vener from compelling plaintiff to pay to him the reasonable value of Vener’s services in addition to whatever may be payable to GeWertz. This point in the plaintiff’s brief is not a stipulation by Vener that he agrees to be compensated at less than the reasonable value of his services. If the entire fee arrangement approved by Justice Benjamin is set aside, as it would have to be if the order appealed from is reversed, the record contains no basis for an assumption that Vener is obliged to acquiesce in being paid $7,690.67 less than he is authorized to be paid by the order of Special Term affirmed by the Appellate Division. It is no answer to this reasoning to say that Vener is not objecting on this appeal. There is no reason for him to object inasmuch as he is not a party aggrieved. He is satisfied to receive the *650 amount payable to Mm by tbe order under review. It does not follow tbat be will be satisfied or will be obliged to be satisfied if tbat order is reversed.
Tbe decision wbicb is being made, as I understand it, is to leave in effect tbat part of Justice Benjamin’s order wbicb determines tbat tbe reasonable value of tbe services of botb lawyers is $21,928, but to bold as matter of law tbat Vener assumed a personal liability to pay GeWertz $15,000 out of whatever sum might be fixed as tbe reasonable value of tbe professional work performed by botb of them. Tbe record, as I read it, is barren of any evidence of such an agreement by Vener. At most, a question of fact would be presented concerning whether such an agreement as tbat was made, and whatever questions of fact are presented have been resolved against appellant by Special Term and tbe Appellate Division.
Tbe object of section 475 of tbe Judiciary Law is to supply a swift and expeditious mode of trying disputes of this nature, botb for tbe protection of tbe lawyer and of bis client. Tbe purpose of tbe proceeding is to determine tbe amount of tbe attorney’s lien (in this case upon tbe insurance company’s draft) (Matter of Peters [Bachmann], 271 App. Div. 518, mod. on other grounds 296 N. Y. 974). If tbe amount of tbe lien is or may be affected by a contract with tbe lawyer, tbat issue has to be tried in tbe same proceeding in order to determine tbe amount of tbe lien. Tbe power of the court is equitable in nature in such a proceeding (Matter of Pieris, 82 App. Div. 466, affd. 176 N. Y. 566). Tbe petition wbicb institutes tbe proceeding may be filed by tbe client or tbe attorney. TMs is recognized as a separate special proceeding (Peri v. New York Central & H. R. R. R. Co., 152 N. Y. 521, 526; Matter of Regan, 167 N. Y. 338; Matter of King, 168 N. Y. 53, 60; Matter of Fitzsimons, 174 N. Y. 15, 16, 20).
There is no basis for contending tbat GeWertz did not know what tbe issue was wbicb be bad to meet, or tbat it was not tried in this special proceeding instituted on plaintiff’s behalf and in wbicb GeWertz Mmself asked to have bis fee adjudicated. Tbe proceeding was instituted in plaintiff’s behalf by order to show cause. Tbe final paragraph in GeWertz’ opposing affidavit reads as follows: “ I pray therefore, tbat, pursuant to section 475 of tbe Judiciary Law, my lien upon tbe check wbicb is mentioned in tbe moving affidavit, be fixed in tbe sum of $10,067.15 *651 and at 20% of any further sums which may he paid out of the settlement, when and as paid.”
This was after GeWertz had refused to he present at the hearing before Mr. Justice Benjamin on January 20, 1956 at which the settlement was approved, and at which he had been informed in writing that the amount of his fee would be drawn in question. It was after GeWertz had been informed that the settlement had been approved by the court which had disapproved his original 50% contingent fee agreement. The moving papers further informed GeWertz that his claim of 20% on the gross proceeds of the settlement was being contested. In the face of that, GeWertz’ own formal application in his opposing affidavit to have the amount of his lien adjudicated, brought him squarely before the Special Term on that issue. He extended and amplified upon the record all the details of what he did for Wojcik, but, even so, the maximum reasonable value which could be placed upon such services in the judgment of Special Term and of the Appellate Division fell so far short of $15,000 that the finding was made and affirmed which has been mentioned. It developed that GeWertz had not kept any record of his time or services, but estimated with hesitance and uncertainty that he had spent about one hour getting the retainer signed; another 10 minutes inspecting the police blotter; about “ three or four hours ” going to Richmond Hill to interview a witness; that about an hour had been spent by someone trying to get a statement out of another witness who refused to sign; that he spent about three hours outlining and dictating the complaint; about five hours on a bill of particulars — an estimate he was not sure of — for, to quote: “I don’t remember exactly. I didn’t mark down the time. I didn’t contemplate this.” He was equally uncertain and vague as to the number of telephone calls made, the time spent on interviews because, as he said, “ It’s very difficult. * * * I didn’t keep a record.” Alleged services rendered in connection with the examination before trial vanished to nothing when it developed that such examination had, in fact, been conducted by the substituted attorney Vener. At the conclusion of the hearing, Mr. Justice Benjamin rendered an oral decision in which he pointed out his displeasure with GeWertz’ attempt to frustrate the settlement by his refusal to appear and his insistence on receiving 20% of the whole amount recovered, including the compensation payments which *652 had been voluntarily made by the carrier without the intervention of either attorney. In this connection, the learned Justice noted that the original retainer had called for 50% of the whole amount recovered and reiterated his view previously expressed that to include compensation payments under the circumstances “ involving these grievous injuries, is unreasonable, unconscionable, oppressive and is void as contrary to public policy and wholly unenforcible as a matter of equity and a matter of law ”. He summed up the amount of services rendered, noting the short period of time spent in hours and the character of the work performed which, in his estimate would justify “ but a minimum payment ”. He then ruled that, under all the circumstances, the total attorneys’ fees of one third of the net recovery would be “ fair and reasonable ”, which he directed to be apportioned one third to Gre Wertz and the balance to Vener.
Nothing in this opinion condemns contingent fees in themselves. It is the abuse of the system to which our attention has been directed. The rule has always been, before and after enactment of section 474 of the Judiciary Law and its predecessor statutes, that if the amount of the lawyer’s contingent fee became so great as to be out of all relation to the value of the work performed, the courts would strike it down. Unless the statements in the opinions of the courts about the fiduciary obligation of the lawyer to his client and his status as an officer of the court are to be treated as pious platitudes, to be honored in the breach rather than in the observance, it is the duty of the courts pursuant to law to take account of the facts as they are and to treat fees such as this as unconscionable and oppressive.
The order appealed from should be affirmed, with costs.
Conway, Ch. J., Desmond and Burke, JJ., concur with' Froessel, J.; Dye and Van Voorhis, JJ., dissent in separate opinions in which Fuld, J., concurs.
Order reversed and matter remitted to Special Term for further proceedings not inconsistent with the opinion herein.

. This is not just a contest between two attorneys; the outcome affects the amount which the client will have to pay, as is shown (infra). .

. Although the existence of the power in the court in any event is recognized in Friedman, it should be noted that in the instance case GeWertz himself formally applied to the court in his answering affidavit to have his fee fixed under section 475 of the Judiciary Law in this special proceeding.