## WABASH RAILWAY COMPANY *v.* ELLIOTT.

CERTIORARI TO THE KANSAS CITY COURT OF APPEALS, STATE
OF MISSOURI.

No. 225.   Argued January 16, 1923.—Decided April 9, 1923.

Where a claim for personal injuries occasioned by the operation of
a railroad while in the exclusive possession and control of the
United States acting through the Director General of Railroads,
was compromised and settled between that official and the claim-
ant without participation by the railway company, an attorney
who had contracted with the claimant to compromise or enforce
the claim for a percentage of the recovery, and who did not con-
sent to the settlement, had no cause of action under a state lien
statute (Rev. Stats. Mo., 1919, § 691) against the railway company.
P. 460.

208 Mo. App. 348, reversed.

CERTIORARI to a judgment of the Kansas City Court of
Appeals affirming a judgment against the Railway Com-
pany, in an action to enforce an attorney's statutory lien.

*Mr. Frederic D. McKenney,* with whom *Mr. N. S.
Brown* was on the brief, for petitioner.

*Mr. Martin J. O'Donnell,* with whom *Mr. George H.
Kelly, Mr. Wm. Buchholz* and *Mr. Isaac B. Kimbrell*
were on the brief, for respondent.

MR. JUSTICE VAN DEVANTER delivered the opinion of
the Court.

On April 2, 1918, while the railroad of the Wabash
Railway Company was in the possession of the United
States and operated by the Director General of Railroads,
Mern G. Welker, a brakeman on that railroad, was fatally
injured and died in circumstances which, under the Em-
ployers' Liability Acts of Congress, probably would have
made the railway company liable in damages for his

injury and death had the company been operating the
railroad at the time. His widow became the administra-
trix of his estate and as such entered into a contract with
Miles Elliott, an attorney at law, under which the latter
was to investigate the claim for the injury and death,
compromise the same, or enforce it by suit, and have for
his service fifty per cent. of all moneys received. Elliott
caused a notice, addressed to the railway company and
reciting the substance of the contract, to be served on one
Stepp, who was the station agent of the Director General
at Chillicothe, Missouri. The contract was made and the
notice given under a statute of Missouri (§ 691, R. S.
1919) which provides that such a contract shall, after the
service of notice, give the attorney a lien on the claim
and the proceeds for his portion or percentage, and that—

" any defendant or defendants, or proposed defendant
or defendants, who shall, after notice served as herein pro-
vided, in any manner, settle any claim, suit, cause of ac-
tion, or action at law with such attorney's client, before
or after litigation instituted thereon, without first pro-
curing the written consent of such attorney, shall be liable
to such attorney for such attorney's lien as aforesaid
upon the proceeds of such settlement, . . ."

June 5, 1918, Elliott commenced an action by the
administratrix against the railway company in the circuit
court of Livingston County, Missouri, to enforce the
claim. Before there was any appearance by the railway
company in that case, the Director General, acting
through a claim agent in his employ, compromised the
claim with the administratrix, paid to her $4,000 from the
funds of the United States Railroad Administration and
received from her a written instrument acknowledging the
receipt of that sum from him and releasing him and the
railway company from all claims and demands by reason
of Welker's injury and death. The Director General
also paid to her from the same funds the further sum of

$162.85 to cover funeral and burial expenses. As part of the compromise and settlement the administratrix and the claim agent acting for the Director General entered into a stipulation bearing the title of the action against the railway company, reciting that the subject-matter of the action had been fully settled between the parties and consenting that the action be dismissed at defendant's costs. This stipulation was presented and filed in the circuit court by counsel acting for the Director General. The settlement and the stipulation for a dismissal were without the consent of Elliott and no part of the sum paid to the administratrix was paid by her to him.

January 11, 1919, Elliott began a proceeding against the railway company in the circuit court of Livingston County, where the action of the administratrix was pending, to enforce a lien under his contract and the state statute. In his petition he set forth the matters before stated, save that instead of recognizing the federal control and operation of the railroad, he directly charged the railway company with all that was done by the Director General and the representatives, agents and employees of the latter; and he alleged that as part of the compromise and settlement the company promised the administratrix to pay to him, as his compensation or percentage under the contract, the same amount that was paid to her. His prayer was that his lien be enforced by awarding him a judgment against the company for that sum. In an amended petition he made the Director General a party, charged both the railway company and the Director General with what he had before charged against the company alone and prayed judgment against both.

Separate answers were filed, but that of the Director General need not be noticed. The company's answer set up, among other things, (1) that the federal possession, control and operation of the railroad covered all the dates named in the petition and there was no possession or

operation by the company during that period; (2) that the acts charged against the company in the petition, in so far as they had any reality, were solely the acts of representatives, employees and agents of the Director General; and (3) that the suit of the administratrix and the proceeding by Elliott could not be maintained against the company but only against the Director General. As showing the nature of the federal control and the company's freedom from liability for acts or omissions in the course of such control, the answer directed attention to and invoked the application of the acts of Congress, proclamations of the President and orders of the Director General according to which that control was exercised.

On the trial the court found the issues between Elliott and the railway company in favor of the former and those between Elliott and the Director General in favor of the latter. Judgment was then entered that Elliott recover $4,162.85 from the company and nothing from the Director General. The company appealed to the Kansas City Court of Appeals and it affirmed the judgment. 208 Mo. App. 348. That court refused to transfer the case to the Supreme Court of the State and the latter denied a petition asking it to review the judgment on writ of certiorari. After the avenues of review within the State were thus exhausted this Court granted a petition for a writ of certiorari to the Kansas City Court of Appeals to bring the case here.

Complaint is made of several rulings, but only one need be considered. Conformably to the local practice the railway company, at the close of the evidence, requested the court to declare that there was no evidence to sustain a finding against it, and therefore the finding and judgment should be in its favor. This request was based in part on what the company claimed was the right construction and application of the congressional enactments, presidential proclamations, and orders of the Director

General relied on in its answer.   The request was refused.
We think it plainly should have been granted.

Affirmatively and without contradiction the evidence
established that at the time of Welker's injury and death
and continually until after Elliott's proceeding was begun
the company's railroad was in the exclusive possession
and control of the United States and operated by the
Director General of Railroads; that Welker's injury and
death were not caused by any act or omission of the com-
pany or anyone in its employ, and that the company had
nothing to do with the compromise and settlement with
the administratrix and did not promise to pay her attor-
ney.   The courts below apparently assumed that the
claim agent who effected the compromise and settlement
represented the company as well as the Director General;
but the assumption was wholly inadmissible.   The evi-
dence was directly and positively to the contrary.   The
claim agent had been in the company's service prior to
the federal control, but during that control was only in
the service of the Director General.   The payment to the
administratrix was made by a check drawn by the Direc-
tor General on funds of the United States Railroad Ad-
ministration and the receipt taken from her recited that
the payment was by the Director General.   Indeed, so
far as appeared, the company did not know of the com-
promise and settlement until after Elliott's proceeding
was begun.   In all the evidence there were but two mat-
ters which, even if separated from the rest, could give any
color to what was assumed below.   One was the inclusion
of the company in the release.   But this was explained
consistently with the other evidence by an accompanying
recital that the sum received by the administratrix from
the Director General was the sole consideration for the
release, and by the fact that in the circumstances simple
justice to the company would suggest its inclusion in the

release. The other matter, was that the claim agent signed the stipulation for a dismissal of the pending suit as attorney for the company. But this was made quite negligible by direct evidence that the claim agent had no authority to act or speak for the company and by the fact that the Director General, during whose operation the claim arose and for whom the claim agent was acting, was free to have himself substituted as a party in the company's place and to assume the defense of that suit. See *Missouri Pacific R. R. Co.* v. *Ault,* 256 U. S. 554.

To sustain its asserted freedom from liability in such circumstances the company relied particularly[1] on § 10 of the Federal Control Act of March 21, 1918, c. 25, 40 Stat. 451, and General Order No. 50 by the Director General of Railroads, U. S. R. R. Administration Bulletin No. 4 (Revised), p. 334. That statute and order were considered at length in *Missouri Pacific R. R. Co.* v. *Ault, supra,* and were there construed as contemplating and intending that rights of action arising out of acts or omissions occurring in the course of the federal control of a railroad should be against the Director General and not the company owning the road. That decision was followed and applied in *North Carolina R. R. Co.* v. *Lee,* 260 U. S. 16, and its principle was recognized in *Alabama & Vicksburg Ry. Co.* v. *Journey,* 257 U. S. 111, and *Davis* v. *L. N. Dantzler Lumber Co., ante,* 280.

Thus whatever claim the administratrix had for Welker's injury and death was against the Director General, not the company. Elliott's lien, if he had one, was on that claim. The settlement of the claim was strictly an

---

[1] It also relied incidentally on the Act of August 29, 1916, c. 418, 39 Stat. 619, 645; the President's Proclamation of December 26, 1917, 40 Stat. 1733; General Orders Nos. 18, 18a and 26 by the Director General of Railroads, U. S. R. R. Administration Bulletin No. 4 (Revised), pp. 186, 187, 196, and § 206 of the Transportation Act of February 28, 1920, c. 91, 41 Stat. 456.

act of the Director General done in the course of the federal control. No liability could attach to the company for that act consistently with the federal statute and order just cited. Whether the particular liability defined in the state statute before quoted was of such a nature that it could be applied to the Director General we need not consider, for there was no appeal from the judgment of the circuit court in his favor. See *Missouri Pacific R. R. Co.* v. *Ault,* pp. 563, *et seq.; Norfolk-Southern R. R. Co.* v. *Owens,* 256 U. S. 565.

*Judgment reversed.*