No. 30,586

CHARLES STEPHENS and PAUL MacCASKILL, Copartners, as STEPHENS & MacCASKILL, *Appellants*, v. JAMES C. DAVIS (HENRY MORGENTHAU, JR., Substituted), Agent for the Government of the United States, under the Transportation Act of March, 1920, and FRANK M. ST. CLAIR, *Appellees.*

(36 P. 2d 316.)

Opinion filed October 6, 1934.

*F. W. Boss, Fred A. Walker, Joe Henbest, C. E. Rumery, C. R. Stauffacher,* all of Columbus, for the appellants; *Paul MacCaskill,* of Abilene, *pro se,* and *Charles Stephens,* of Columbus, *pro se.*

*W. W. Brown,* of Parsons, for the appellees.

The opinion of the court was delivered by

DAWSON, J.: This was an action to enforce a legal right arising from a contract of employment, secured by an attorney's lien on 50 per cent of the amount recoverable, by Frank M. St. Clair from the director general of railroads on account of injuries sustained by him as a railway employee during the period of federal control of railroads, December 26, 1917, to March 1, 1920.

So far as here pertinent the controlling facts were these: On October 17, 1919, Frank M. St. Clair was employed as a fireman on the Missouri, Kansas & Texas Railway. On that date he was injured in a collision in the switch yard at Parsons, Kan. As a consequence St. Clair lost part of one leg and received other permanent injuries. On December 4, 1919, St. Clair employed plaintiffs, as attorneys, to bring an action for him to recover damages for his injuries. By the terms of the contract of employment plaintiffs were to receive 50 per cent of all money paid to St. Clair on account thereof.

Accordingly on December 11, 1919, plaintiffs filed an action in behalf of St. Clair in the district court of Labette county against Walker D. Hines, then director general of railroads, reciting the facts of their client's injuries and of the director general's liability therefor, and praying for judgment for $75,650.

At the time of filing that action these plaintiffs served notice upon the director general of their employment by St. Clair to serve as his attorneys in his action for damages, and stating that they had and claimed a lien upon all sums due or to become due their client on account thereof.

Some two weeks later, on December 28, 1919, the director general, through his claim agents and attorneys, without notice to plaintiffs, effected a settlement with St. Clair for all his damages for the sum of $7,650, which was paid to St. Clair and another firm of lawyers representing him. Plaintiffs' rights based on their attorneys' lien on the amount thus paid by the director general were ignored and disregarded.

Hence this lawsuit, which has haltingly proceeded, for recovery against the director general of their due.

This action, which was originally begun on January 31, 1922, alleged the pertinent facts. Various dilatory pleas were lodged against it. An amended petition was filed October 17, 1923, to

which were attached a copy of plaintiffs' contract of employment as attorneys for St. Clair, a copy of the petition filed in the action on behalf of St. Clair against the director general of railroads, and a copy of the notice of plaintiffs' attorneys' lien which was served upon the director general and which also showed the nature of that service under the signature of the sheriff of Labette county.

Demurrers and motions lodged against this amended petition were overruled, and *on January 20, 1926, on application of defendants,* an order of court was granted giving these defendants further time to plead.

The then federal agent, James C. Davis, and St. Clair filed separate answers. That of Davis, federal agent, contained neither general nor special denial, but pleaded specially as follows:

1. That the amended petition did not state a cause of action.

2. That the court did not have jurisdiction of the subject matter.

3. That plaintiffs waived their attorneys' lien when they permitted the action they had instituted on behalf of St. Clair against Walker D. Hines, director general, to be dismissed.

4 and 5. Paragraphs 4 and 5 were lengthy elaborations of the matters pleaded in paragraphs 2 and 3 and so far as pertinent will be noted later.

6. That any right of action plaintiffs might have had against the director general was barred by the second and third subdivisions of R. S. 60-306, the Kansas statute of limitations.

In the separate answer of Frank M. St. Clair the first and second paragraphs of his answer were identical with those of his codefendant. The third paragraph alleged that when he signed the contract of employment with plaintiffs on December 4, 1919, he was sick, weak physically and mentally and incapacitated by reason of his injuries and because of the use of morphine which was administered to him to alleviate his suffering, and that he did not understand the contract he had signed nor its conditions; and that on December 11, 1919, but prior to the hour on that day when plaintiffs filed the action against the director general, he caused a telegram to be sent to them to do nothing in his case and that a letter would follow. This letter, mailed the same day, read:

"Parsons, Kan., December 11, 1919.
*"Stephens & MacCaskill, Lawyers, Columbus, Kan.:*

"Dear Sirs—I want you to give up my case. When you were here last Thursday I had been suffering pain and had taken some morphine to get relief. You told me if I was not satisfied with the contract I could break it, and I

am not satisfied. I did not understand you were to get one-half of what I got if the railroad company paid the money to me. I thought that Pile & Goodrich [attorneys who settled St. Clair's claim against the director general a few days later for $7,650] were to work with you in the case, and I find from the contract that you made it so as to cut them clear out. I ask you to please send me back my contract and not to do anything in the case.

"Very truly yours,        FRANK M. ST. CLAIR."

In other respects St. Clair's answer adopted the allegations of the answer filed on behalf of the director general.

Plaintiffs replied to defendants' separate answers with general denials.

On December 17, 1929, James C. Davis, as agent for the government, filed a motion to dismiss. This was overruled. On April 28, 1930, the cause came on for trial. A jury was waived; evidence was introduced at length; and the trial court made findings of fact and conclusions of law, to which space must be given here:

"1. On October 17, 1919, Frank M. St. Clair was severely injured while engaged in his employment as a fireman on the M. K. & T. railroad in the railroad yards in Parsons, Kan. As a result of said injury his left foot was amputated below the knee joint, and the other leg was so injured that it is still impaired. At the time of the injury the railroads of this nation were under federal control by virtue of an act of congress. (Public, No. 107, 65th Congress.)

"2. On December 4, 1919, the said St. Clair made and entered into a written contract with the firm of Stephens & MacCaskill, whereby it was agreed between them that the firm of Stephens & MacCaskill should act as his attorneys in the matter of prosecuting his claim for personal injuries against the director general of railroads, and for their services as his attorneys they were to receive 50 per cent of any amount recovered for the injuries he, the said St. Clair, had sustained.

"3. Pursuant to said contract said attorneys interviewed said St. Clair and at least one other witness, briefed the questions of law, and prepared and signed and filed a petition in the district court of Labette county, Kansas.

"4. At the time of entering into said contract, defendant St. Clair had been using drugs to reduce the pain and used said drugs until he became addicted to the drug habit, *but the court finds that at the time of entering into the contract with the firm of Stephens & MacCaskill, the said St. Clair was competent to contract.*

"5. On December 11, 1919, the firm of Stephens & MacCaskill filed the petition praying for judgment in favor of St. Clair against the director general of railroads for personal injuries sustained, and on the same date served a written notice on the defendant, director general of railroads, claiming an attorneys' lien. Said notice was served by leaving a copy of same at the ticket office of the Katy system at Parsons, Kan.

"6. On December 7, 1919, one Mr. Mast, a claim agent, commenced nego-

tiations with St. Clair for a settlement of his claim, and at said time the defendant St. Clair claimed he had employed no attorneys.

"7. On December 11, 1919, the firm of Pile & Goodrich, lawyers, by telephone, notified said Mast, claim agent, that they represented St. Clair. On December 23, 1919, the director general settled with St. Clair, through the firm of Pile & Goodrich, attorneys, for the sum of $7,500 and $150 for medical treatment for the drug habit.

"8. That the firm of Stephens & MacCaskill were ignored by the director general in making said settlement.

"9. That when St. Clair entered into the contract with Stephens & Mac-Caskill, he was as competent to contract as when he entered into the contract with Pile & Goodrich or with the director general.

"10. That the notice of attorneys' lien was legal and sufficient under the laws of the state of Kansas.

"11. While the railroads of this nation were under the control of the president, they were subject to all existing laws and statutes except as were inconsistent with the act of congress (Public, No. 107, 65th Congress) on any order, general or special, of the president.

"12. That all orders of the director general of railroads, by proclamation of the president, became the orders of the president with regard to the control and operations of railroads.

"13. By the terms and provisions of the general or special orders of the director general, concerning personal injury claims, the defendant, the director general, was not bound to recognize the notice of the attorneys' lien, and was free to deal with St. Clair in any manner he saw fit, and to ignore the plaintiff's contract or any contract entered into by the said St. Clair and any other person or persons if, in his opinion, same was not for the best interests of the said St. Clair.

"14. That the existing laws relating to contracts between attorneys and clients, and attorney's liens, with regard to personal injury claims, were abrogated and set aside by the president's orders through the director general of railroads.

.   .   .   .   .   .   .   .   .   .   .   .   .

"16. The contract between the defendant St. Clair and the firm of Stephens & MacCaskill is valid and binding.

"17. That the defendant, the director general of railroads, is liable, *quantum meruit,* to the plaintiffs for services renderd, but no claim is made by the plaintiffs against said defendant for the value of the services rendered.

"Wherefore, it is by the court considered, ordered, adjudged and decreed that the plaintiffs have and recover of and from the defendant, Frank M. St. Clair, the sum of $3,750, together with one-half of the costs of this action; and it is further considered, ordered, adjusted and decreed that the plaintiffs take nothing from the defendant, director general of railroads, and that said defendant have judgment for his costs herein; that the clerk of the court shall assess one-half of the costs of this case to the plaintiffs and one-half to the defendant St. Clair."

Later, on exceptions taken by St. Clair, the judgment against him was vacated and the action as to him was dismissed.

Plaintiffs' motions to set aside the court's ruling in favor of the director general and for a new trial were overruled, and judgment was entered against plaintiffs. They appeal, urging certain legal propositions which they contend required judgment to be ordered in their behalf. Plaintiffs also assign error in vacating the judgment against St. Clair and in dismissing the cause against him.

It is not contended that under Kansas law there was any illegality in the contract of employment entered into between plaintiffs and St. Clair. Such contracts are valid when fairly made. Neither was it contended below that there was any procedural irregularity in impressing a lien in plaintiffs' behalf on whatever amount the director general should be liable if the matter was governed by Kansas law. (R. S. 7-108; *Trinkle v. McCue*, 113 Kan. 623, 216 Pac. 263; *Bouchey v. Gillilan*, 138 Kan. 405, 26 P. 2d 451.)

The chief defense relied upon is that by virtue of certain pronunciamentos of federal officials, predicated upon some supposed authority conferred on them by the acts of congress under which the railroads passed under federal control, the Kansas law pertaining to attorneys' liens was inoperative during the period of federal control.

Let us see about this. On December 26, 1917, the president by proclamation took possession of the railroads for war purposes, such proclamation reciting that he did so by authority of an act of congress approved August 29, 1916. (U. S. Comp. Stat. 1918, § 1974a; 10 U. S. C. A. § 1361; United States Railroad Administration Bulletin No. 4 [Revised] pp. 6-9.)

Neither that act nor the president's proclamation intimated that the local laws of the several states governing attorneys' liens in personal-injury suits were to be superseded, annulled or held in abeyance because of federal control. The act of congress of March 21, 1918, which broadly supplemented the prior authority of the president over railroads in war time, contained certain paragraphs pertinent to the legal question of present concern. These, in part, read:

"Sec. 8. The president may execute any of the powers herein and heretofore granted him with relation to federal control through such agencies as he may determine. . . ."

"Sec. 10. Carriers while under federal control shall be subject to all laws and liabilities as common carriers, whether arising under state or federal laws or at common law, except in so far as may be inconsistent with the provisions of this act or any other act applicable to such federal control or with

any order of the president. Actions at law or suits in equity may be brought by and against such carriers and judgments rendered as now provided by law; and in any action at law or suit in equity against the carrier, no defense shall be made thereto upon the ground that the carrier is an instrumentality or agency of the federal government. . . But no process, mesne or final, shall be levied against any property under such federal control. . ."

"Sec. 15. Nothing in this act shall be construed to amend, repeal, impair, or affect the existing laws or powers of the states in relation to taxation or the lawful police regulations of the several states, except wherein such laws, powers, or regulations may affect the transportation of troops, war materials, government supplies, or the issue of stocks and bonds." (United States Railroad Administration Bulletin No. 4 [Revised], 11-20; U. S. Comp. St., § 3115¾ a *et seq.; ch.* 25, 40 Stat. at L. 451 *et seq.*)

This act was followed on April 11, 1918, by the president's proclamation in which William G. McAdoo was designated as director general of railroads. One paragraph of the presidential proclamation reads:

"Until and except so far as said director general shall from time to time otherwise by general or special orders determine, such systems of transportation *shall remain subject* to all existing statutes of the United States and orders of the Interstate Commerce Commission, and *to all statutes* and orders of regulating commissions *of the various states* in which said systems or any part thereof may be situated. But any orders, general or special, hereafter made by said director general, shall have permanent authority and be obeyed as such." (Bulletin No. 4 [Revised], 23.) *Italics ours.*

As a proper incident of federal control of railroads John Barton Payne was appointed as general counsel by Director General McAdoo on February 9, 1918. Certain regional directors were likewise appointed, one of whom was R. H. Aishton, who was placed in charge of a group of northwestern railroads with headquarters in Chicago. (Director General's Circular No. 33.) Those railroads did not include the lines of the Missouri, Kansas & Texas Railway. The latter were grouped with other southwestern railroads and placed in charge of B. F. Bush, with headquarters in St. Louis. (Director General's Circular No. 35.)

On May 23, 1918, John Barton Payne addressed a letter to Aishton and other regional directors, but not to Bush, touching briefly on the law relating to claims for personal injuries sustained in the operation of railroads and advising how they should be dealt with. This letter reads:

"UNITED STATES RAILROAD ADMINISTRATION,
"W. G. McADOO, DIRECTOR GENERAL,
"Subject: Personal-injury claims.          WASHINGTON, May 23, 1918.

"MY DEAR SIRS—The federal control act contemplates that suit for personal injuries may be brought as heretofore, but provides that executions may not be levied on the property of the carrier while in the possession of the government. This means that while a judgment may be recovered, it devolves upon the director general to provide for payment, and this places upon him the responsibility of considering the merits of the claims and the persons to whom payment is made. It is the desire of the director general that justice shall be done to all employees who are injured in the discharge of their duties. This does not mean that verdicts based upon prejudice or passion shall be paid or that large sums shall be paid by the government to attorneys and solicitors who have no claim upon the government. The right is reserved to consider the merits in determining what provisions shall be made.

"It will be the policy of the government to discourage litigation, and to deal directly with injured persons to the end that the injured person may receive the benefit of any amount which the government pays, without the expense of litigation and without being compelled to turn over one-third or one-half to an attorney. You may, therefore, let it be known that such claims will be considered on their merits.

"As to fee contracts: You are authorized to exercise a wise discretion, and are not required to make payment as provided therein, but only on such terms as will enable the person injured to receive just treatment. If the contract is unjust, you may pay the attorney such reasonable sum as will pay him for the services actually rendered.

"Yours very truly,   JOHN BARTON PAYNE.
"MR. A. H. SMITH, Regional Director, New York, N. Y.
"MR. C. H. MARKHAM, Regional Director, Atlanta, Ga.
"MR. R. H. AISHTON, Regional Director, Chicago, Ill."

Regional Director Aishton caused the foregoing letter to be brought to the attention of western railroads approvingly in a circular which reads:

"UNITED STATES RAILROAD ADMINISTRATION,
"To Western Railroads:          CHICAGO, June 1, 1918.
"CIRCULAR No. 114—PERSONAL-INJURY CLAIMS.

"Your attention is called to inclosed copy of letter written by Hon. John Barton Payne, general counsel, United States railroad administration, in the matter of the adjustment of personal-injury claims arising during the period of federal control.

"Will you please call the attention of your law and claim departments to this communication, emphasizing the desire of the federal administration to discourage litigation by dealing direct with injured parties, or, in case of death, with their personal representatives, and the purpose of the government to ignore the ordinary contingent fee contract, providing for the payment of unreasonable compensation to attorneys.

"R. H. AISHTON, Regional Director."

On behalf of the appellees it was urged at the trial and is contended here that the foregoing letter of Payne, general counsel for the United States railroad administration, which was circularized among western railroads by Aishton, regional director for the group of northwestern railroads, had the legal effect of abrogating the Kansas law governing attorneys' liens on proceeds of personal-injury claims growing out of the federal operation of railroads. And this, too, notwithstanding the specific language of section 10 of the act of congress of March 21, 1918, and the assurance given to the contrary in the president's proclamation of April 11, 1918, quoted above. We cannot assent to any such contention. Moreover, such an interpretation grossly distorts the text and spirit of the letter of the general counsel. Mr. Payne's letter begins with a statement that the federal control act contemplates that suits for personal injuries should be brought as theretofore, and, indeed, he could not have advised otherwise, since section 10 of the pertinent statute had so declared. The only specific change or modification of existing local statutes pertaining to suits made by the federal statute dealt with the procedure for realizing upon the judgment which a successful claimant in such litigation might obtain. The Payne letter states that while judgments might be recovered it would devolve upon the director general to provide for payment. The letter proceeds to advise that the federal statute places a responsibility on the director general to consider claims for injuries on their merits, and states that it is the desire of the director general to do justice in all such cases. It next advises that verdicts based on passion and prejudice should be resisted—which means that they should be contested in court by whatever procedural measures might be available, such as by motion for a new trial and by appeal. It likewise advises that large sums to attorneys and solicitors who have no claim against the government would not be paid, but even in such cases General Counsel Payne's letter is not susceptible of an interpretation that the courts would not be open to parties who might have legitimate claims for attorneys' services or attorneys' liens. Mr. Payne's letter then proceeds with commendable advice to the regional directors, and to all who were concerned with the subject of personal-injury claims against the director general, that litigation over such claims should be discouraged and the claimants dealt with directly and fairly so far as practicable, so that they would not have to divide compensation or awards for their injuries

with attorneys.  We believe that such is the policy of humane and enlightened employers everywhere, and that General Counsel Payne was simply urging that such a policy be pursued by those authorized to act in such cases while the government was in control of the railroads of the country.  Touching contracts for fees between attorneys and clients in dealing with personal-injury claims, Mr. Payne did not say they were illegal.  He simply advised that the regional directors were authorized to exercise a wise discretion, and that they were not required to pay exactly what the contracts of employment specified, but only on such terms as would insure just treatment to the injured claimant; and where the contract was unjust they could pay the attorney what his actual services were worth.  All quite fair and proper, to be sure; but there is no intimation that if the attorney for the claimant and the negotiating representatives of the director general could not agree on such vital matters the attorneys' statutory liens could be ignored altogether and that the courts of the land would not have jurisdiction to enforce them.  There is not much difference between the Kansas statute giving the courts supervisory control of the amount of an attorneys' lien (R. S. 7-109) and the wise and commendable policy outlined in the foregoing letter of the general counsel for the United States railroad administration; but the director general could not dispose of the attorneys' lien in this case by simply ignoring it.  If he deemed it unreasonable or excessive he could have so pleaded in the action.  No more significance can be attached to Circular No. 114 promulgated by Regional Director Aishton, who had charge of the northwestern group of railroads.  While, so far as the record is concerned, Aishton had nothing to do with a personal-injury claim sustained by a railway fireman in Parsons, we would not quibble on the question of his authority.  If Director General McAdoo or the president himself had given his personal approval to the letter of John Barton Payne, as indeed he might very well have done, it would not have been anything more than the outline of a wise and humane policy and would not have suspended or abrogated the Kansas law governing attorneys' liens in the slightest degree.

In *Wabash R. Co. v. Elliott*, 261 U. S. 457, 67 L. Ed. 743, the supreme court of the United States left open the question of the validity of an attorneys' lien in a personal-injury case during the period of federal control, because the action had been improperly brought against the railway company.

In *Miner v. Payne*, 150 Minn. 103, and in *McKennell v. Payne*, 189 N. Y. Supp. 7, attorneys' liens under state laws in personal-injury cases were upheld in actions against the director general; and it is significant that the defendant director general in each of these cases was the identical John Barton Payne who, while serving as general counsel for the United States railroad administration, had formulated the letter outlining the proper policy for the director general and his staff of federal administrators to follow in dealing with personal-injury cases. In neither of these cases was it suggested that such policy had the legal effect of overriding state laws on the subject of attorneys' liens in personal-injury suits against the director general.

In support of the judgment of the trial court counsel for defendants also contend that the contract of employment between plaintiffs and St. Clair was illegal, because it was an assignment of a portion of a claim against the government. Presumably the federal statute relied on, although not cited by counsel, is Rev. St. § 3477; Comp. St. § 6383; 31 U. S. C. A. § 203. In *McGowan v. Parish*, 237 U. S. 285, 59 L. Ed. 955, a contract for attorneys' services to be based on the successful prosecution of their clients' claims against the government was sustained and enforced.

In *Parrington v. Davis*, 285 Fed. 741, it was held:

"Rev. St. § 3477 (Comp. St. § 6383), rendering assignments of any claim upon the United States void unless executed after allowance and issuance of warrant for payment, has no application to claims against the United States railroad administration for rebate for overcharges, because of the provisions of federal control act March 21, 1918, § 10 (Comp. St. 1918, Comp. St. Ann. Supp. 1919, § 3115¾ j), authorizing suits to be brought against the carriers and providing that no defense shall be made thereto upon the ground that the carrier is an instrumentality of the federal government." (Headnote.)

In *Empire Refining Co. v. Davis, Director General*, 6 F. 2d 305, it was held:

"Assignment of corporation's claim against director general of railroads on reparation award to another corporation, into which assignor merged, was not violative of Rev. St. § 3477 (Comp. St. § 6383), relative to assignments of claims against the United States, in view of federal control act, § 10 (Comp. St. 1918, Comp. St. Ann. Supp. 1919, § 3115¾ j), notwithstanding action was brought under transportation act, § 206 (Comp. St. Ann. Supp. 1923, § 10071¼ cc), after termination of federal control, since federal control act and transportation act must be construed together." (Syl. ¶ 3.)

See, also, *Richmond Co. v. United States*, 275 U. S. 331, and notes

therein in 72 L. Ed. 303. Under those authorities it seems clear that defendants' contention on this point is untenable.

It is next contended on behalf of the appellees that plaintiffs' claim was barred by the term of the act of congress of February 28, 1920, which provided for the termination of federal control of railroads. (41 Stat., ch. 91, p. 461, U. S. Comp. Stat.. Cum. Supp. 1925, p. 835.) That statute allowed two years in which to institute suit against the designated agent of the government for any cause of action arising against the director general during the period of federal control. The present action was begun on January 31, 1922, and it is not discernible to us how it could be barred under any statute, federal or state. There was no infirmity in the action against the agent of the government merely because St. Clair was not joined as a defendant until October 17, 1923. Our code provides that additional proper parties may be brought into an action at any time before or after judgment upon order of court. (R. S. 60-741, 60-759.)

The foregoing disposes of the principal contentions of counsel for the defendants who seek to uphold the judgment, and in our opinion neither one nor all together are sufficient to justify it. In appellees' brief a belated contention is made that the contract of employment between plaintiffs and St. Clair was unreasonable and unconscionable. If that contention were meritorious, it is a pity that counsel did not fairly raise that point years ago, as advised in the letter of John Barton Payne to the regional directors, or that they did not plead it in their answer in this case, so that issue could have been joined thereon and settled on evidence before the trial court. Surely counsel do not need to be told that this point now raised for the first time on appeal cannot be considered.

For some reason which the record does not disclose, the judgment which was first rendered against St. Clair and in favor of plaintiffs was set aside. We think it should be reinstated; and the order of this court will be that the judgment of the district court is reversed and the cause remanded with instructions to enter judgment as prayed for against both defendants, Henry Morgenthau, Jr., substituted for James C. Davis as agent of the government of the United States, and Frank M. St. Clair.

The judgment is reversed.