530 So.2d 1116 (1988)
Randy NEELY
v.
HOLLYWOOD MARINE, INC. and Tenneco Oil Company.
No. 88-C-0618.
Supreme Court of Louisiana.
September 12, 1988.
Concurring Opinion September 19, 1988.
Rehearing Denied October 20, 1988.
*1117 Lawrence D. Wiedemann, W. Lloyd Bowers, Wiedemann & Fransen, New Orleans, for applicant.
Robert S. Reich, Rufus C. Harris, III, L.R. DeBuys, IV, Terriberry, Carroll & Yancey, John E. Galloway, Deborah B. Ginsburg, Galloway, Johnson, Tompkins & Burr, New Orleans, for respondents.
DIXON, Chief Justice.
In this case the plaintiff, Randy Neely, a seaman, discharged the attorneys representing him in a maritime personal injury suit against the defendants, Hollywood Marine, Inc. and Tenneco Oil Company. Plaintiff then entered into a settlement with the defendants. Plaintiff's attorneys, the law firm of Wiedemann & Fransen, filed a petition in intervention in the seaman's suit seeking enforcement of its contingent fee contract with plaintiff and reimbursement for medical expenses and other costs incurred in the prosecution of the suit. The contingency fee contract was simultaneously filed with the clerk of court and served in conformity with R.S. 37:218. The attorneys later filed a supplemental petition of intervention alleging the nullity of the settlement agreement.
The trial court first dismissed the suit with prejudice and later granted defendants' motion for summary judgment dismissing the petition of intervention and held the compromise agreement between plaintiff and defendants "was satisfactory and enforceable in plaintiff's best interests and not overreaching." The court of appeal affirmed. Neely v. Hollywood Marine, Inc., 518 So.2d 1151 (La.App. 4th Cir.1987). We reverse.
On May 8, 1985 plaintiff, a twenty-two year old deckhand, sustained head and facial injuries in an accident on board a vessel owned by Hollywood Marine, Inc. Plaintiff has undergone surgical procedures for neuropsychological damage, scarring and a hearing deficiency as a result of this injury. On May 13, 1985 plaintiff entered into a contingency fee contract for representation with intervenors, Wiedemann & Fransen. The contingency fee contract contained a provision specifying that the client "agrees not to settle or compromise the suit, claim or proceeding personally with defendant, and not to employ any other counsel" in the matter. On June 13, 1985 the plaintiff's lawyers filed a Jones Act and general maritime suit against defendants in the Civil District Court of Orleans Parish seeking damages on behalf of the plaintiff for the injuries he sustained as a deckhand in Hollywood Marine's employ. Suit was filed under the Judiciary Act of 1789, 28 U.S.C., § 133 (the "saving to Suitors' Clause").
On November 19, 1985 plaintiff mailed an undated letter to the intervenors discharging them.[1] This letter was typed by *1118 an employee of Hollywood Marine in Houston, Texas while plaintiff was in Houston to discuss the possibility of a settlement with the defendants. At the time of these settlement discussions, defendants knew that plaintiff was under the care of several doctors because of his injury and was facing further surgery. The intervenors received the letter discharging them on November 21, 1985. These negotiations with plaintiff leading to the release were carried on in Houston by Mr. Thomas Vacek, vice president in charge of claims for Hollywood Marine, and his assistant, Kem Coen.
Plaintiff returned to Houston the next day, November 22, and entered into a release and compromise in which defendants agreed to pay him $50,000 and to pay the future medical expenses for two further surgeries, provided the surgeries were done within one year from the date of the contract. In consideration for this settlement, plaintiff agreed to discharge the defendants from any and all liability arising from the maritime accident. Plaintiff was unrepresented in the negotiation of this settlement agreement. A sworn statement by plaintiff was taken in Houston at the Hollywood Marine offices before Mr. Ronald White, the Texas attorney for Hollywood Marine. The statement was recorded by a shorthand reporter, with Mr. Vacek of Hollywood Marine present. At that time plaintiff was asked to sign a joint motion for dismissal with prejudice. Plaintiff signed this motion and accompanying order without representation.
On November 25, 1985 Wiedemann & Fransen filed a petition of intervention seeking reimbursement of medical expenses and costs paid on behalf of plaintiff as well as an enforcement of its contingent fee contract, or, in the alternative, intervenors sought legal fees of $200,000 on the basis of quantum meruit. On December 5, 1985 defendants answered the intervention with a general denial.
On joint motion of plaintiff and defendants, the trial court on December 12, 1985 ordered dismissal with prejudice of plaintiff's suit. This dismissal was based on the compromise and release agreement between plaintiff and defendants. The motion was the one which plaintiff signed while in Houston; he was unrepresented and signed the motion himself. The motion to dismiss was filed in New Orleans by defendants' Louisiana attorney, Rufus Harris of Terriberry, Carroll and Yancey. Intervenors were not notified of the dismissal.
On February 26, 1986 defendants filed a motion for summary judgment asking that the intervention be dismissed and arguing that the contingency fee contract was not filed timely since it was filed after the settlement agreement had already been completed.
On March 5, 1986 intervenors filed an amended petition for intervention alleging the nullity of the settlement agreement because plaintiff was unrepresented and also alleging that the amount paid by defendants is grossly inadequate for the injuries sustained. Intervenors also alleged that the dismissal and final judgment of plaintiff's suit was null and void under R.S. 37:218 because they were entered subsequent to the filing and service of intervenors' petition and recordation of the contingency fee contract.
A hearing on the rule to show cause and motion for summary judgment was held on October 3, 1986. Based on the briefs and documents in the record, the trial court granted defendants' motion for summary judgment and dismissed the petition of intervention on October 28, 1986, finding that the contingency fee contract was not timely filed. The trial court then held that the compromise agreement was "satisfactory and enforceable in plaintiff's best interests, and not overreaching."
The court of appeal affirmed finding intervenors, once discharged, had no standing to urge the invalidity of the settlement agreement.
A review of the jurisprudence dealing with R.S. 37:218 convinces us that the prior interpretation of this statute is not dispositive *1119 under the particular facts of this case. R.S. 37:218 reads as follows:
"By written contract signed by his client, an attorney at law may acquire as his fee an interest in the subject matter of a suit, proposed suit, or claim in the assertion, prosecution or defense of which he is employed, whether the claim or suit be for money or for property. In such contract, it may be stipulated that neither the attorney nor the client may, without the written consent of the other, settle, compromise, release, discontinue or otherwise dispose of the suit or claim. Either party to the contract may, at any time, file and record it with the clerk of court in the parish in which the suit is pending or is to be brought or with the clerk of court in the parish of the client's domicile. After such filing, any settlement, compromise, discontinuance, or other disposition made of the suit or claim by either the attorney or the client, without the written consent of the other, is null and void and the suit or claim shall be proceeded with as if no such settlement, compromise, discontinuance, or other disposition had been made."
In Saucier v. Hayes Dairy Products, Inc., 373 So.2d 102 (La. 1979), on rehearing, this court dealt with a case in which an attorney was dismissed without cause where a contingent fee contract existed between the attorney and his client. The attorney intervened in the personal injury suit claiming one-third of any recovery by the client. There the court stressed that R.S. 37:218 is to be interpreted in light of other legal principles governing the conduct of attorneys in their relationships with their clients. A primary consideration in this regard is the court's duty to assert the authority given it by the Constitution to regulate the practice of law, which stems from the grant of original exclusive jurisdiction of disciplinary proceedings against a member of the bar. La. Const., Art. V, § 5(B); see Louisiana State Bar Association v. Edwins, 329 So.2d 437 (La. 1976). This court's authority resulted in the adoption and promulgation of the Articles of Incorporation of the Louisiana State Bar Association, which in turn came to incorporate the Code of Professional Responsibility. The Code of Professional Responsibility regulates attorneys' practices and has been recognized as having the force and effect of substantive law. Legislative acts which tend to impede or frustrate this court's judicial authority in regulating the practice of law are without effect.
Under the disciplinary rules this court recognized the client's absolute right to discharge his attorney despite the existence of a contingency fee contract. The court also found that the disciplinary rules prohibit the acquisition of an absolute ownership interest in the client's claim prior to his performance of all or substantially all the legal services. The language of the statute giving the attorney "an interest in the subject matter of a suit" was interpreted by this court to be "no more than a privilege granted to aid the attorney's collection of a fully earned fee out of the fund which the satisfaction of the client's claim yields. Compliance with the statute would result in the creation of a cause of action against the client and the opposing party for such fee as is legal and is earned in the event a settlement or other disposition results without the consent of the lawyer." Saucier v. Hayes Dairy Products, Inc., supra at 117.
This court went on to explain the manner in which the attorney's fee is to be determined: "The amount prescribed in the contingency fee contract, not quantum meruit, is the proper frame of reference for fixing compensation for the attorney prematurely discharged without cause." Saucier, supra at 118. The court discussed the rationale behind this method of computing fees saying in a footnote that this would serve to thwart a client's attempt to replace his attorney with another or to proceed in proper person in order to avoid payment of a contingency fee after substantially all of the legal services contemplated by the contract have been performed and settlement or judgment has been reached or is imminent. Saucier, supra fn. 8 at 118.
In Calk v. Highland Construction and Manufacturing, 376 So.2d 495 (La. 1979), the plaintiff reached a settlement agreement *1120 with the defendant in a personal injury case; a bank which held a prior judgment against the plaintiff, seized plaintiff's interest in the personal injury suit. Plaintiff's attorney, who had a contingent fee contract with plaintiff, also had a claim against the proceeds of the suit. Applying Saucier, supra, the court held that R.S. 37:218 gives the attorney, who has an interest in the claim, a privilege to the extent of his earned fee on any recovery obtained by settlement. This court held that an attorney's fee contract need not be recorded before the statutory privilege granted by R.S. 37:218 is effective. However, in order to succeed, the attorney must assert his claim by intervention or other legal proceedings prior to disbursement of the proceeds to a third party. The court explained that the recordation language in the third sentence of R.S. 37:218 is not germane to the existence of the privilege created by the first sentence of the statute.
"Based on the historical developments of R.S. 37:218, and what seems to be the intent of the Legislature in enacting that portion of Act 124 of 1906 which is now R.S. 37:218, we believe that R.S. 37:218 was intended to give attorneys comparable rights as are given in R.S. 9:5001. Under R.S. 9:5001, the attorney does not have to record the contract between himself and his client in order for the attorney to have priority on the proceeds recovered from a judgment on which a creditor has a claim under R.S. 13:3864. See Roberts v. Hanover Insurance Company, 338 So.2d 158 (La.App. 2nd Cir. 1976). Correspondingly, the attorney's fee contract, giving rise to the privilege granted by R.S. 37:218, does not have to be recorded to be effective. However, for the attorney to succeed he must assert his claim by intervention or other legal proceedings prior to disbursement of the proceeds to a third party. Selly v. Watson, 210 So.2d 113 (La.App. 1st Cir. 1968)." Calk v. Highland Construction & Manufacturing, supra at 499.
Thus, the attorney's statutory privilege, even though unrecorded, attaches to the settlement proceeds in preference to the claim of a seizing creditor, provided it is legally asserted before disbursement.

Scott v. Kemper Insurance Company, 377 So.2d 66, 70 (La. 1979) dealt with the issues of whether an attorney has the right to void a client's settlement made without the attorney's consent, and whether the attorney has a right to proceed with the claim as if no such settlement, compromise, discontinuance or other disposition had been made. In Scott the attorney, who was discharged by plaintiff before settlement of the claim, intervened in the tort suit and sought to enforce the contingency fee contract. The court held that the statute cannot be literally applied to permit a discharged attorney with a recorded contingent fee contract to nullify a client's later settlement or to proceed with the litigation as though no settlement had been made. Such an application of the statute would conflict with the disciplinary rules recognizing a client's absolute right to discharge his attorney and prohibiting an attorney from acquiring a proprietary interest in the client's cause of action.
"The obvious intent of R.S. 37:218 is to prevent a client's discharging an attorney and thereby depriving the attorney of his earned fee. Therefore, if the attorney with a written contingency fee contract bearing the no consent stipulation `file[s] and records it with the clerk of court in the parish in which the suit is pending ..', then a defendant who disburses the settlement proceeds without ascertaining and paying the fee to which the attorney is due, will do so to his prejudice. The extinguishing effect of the settlement will therefore be suspended, as the Court of Appeal determined in this case, until recognition and payment of the fee to which the attorney is entitled, determined in accordance with the principles established in Saucier.

Unlike the situation in Calk, where recordation of the contingency fee contract is irrelevant in a contest between an attorney and the client's creditor, imposition of an obligation upon the client's obligor in the suit to retain settlement funds until determination of fee entitlement, is dependent upon the attorney's *1121 full compliance with R.S. 37:218, including the recordation of the contract as stipulated therein."
Where a wife had a contingency fee contract with an attorney to represent her in the partition of the community, this court held that the attorney did not lose his privilege on the proceeds of the judgment against the husband, who was a party to the lawsuit, by failing to file notice of the privilege before the judgment was canceled where the contingency fee contract was recorded in both the suit record and mortgage records two days before cancellation of the judgment. Olivier v. Doga, 384 So.2d 330 (La. 1979). The court noted the language from Calk in which it was held that under R.S. 9:5001,[2] an attorney does not have to record the contract between himself and his client in order for the attorney to have priority on the proceeds from a judgment. Regarding this prior holding, the court stated as follows:
"... As a mere observation, attorney-intervenor a fortiori should not be required to record his contract as against the husband who is a party to the lawsuit; but as noted above in Calk, recordation was not necessary and it was error for the Court of Appeal to restrict the operative effect of R.S. 9:5001 by imposing on it the restrictive requirement of prior recordation of the contingency fee contract." Olivier v. Doga, supra at 332.
The jurisprudence which has been developed regarding R.S. 37:218 was not designed to solve the problems created in this case. The jurisprudence under this statute, specifically Saucier, supra, makes clear that the statute has been interpreted so as not to conflict with the disciplinary rules regarding a client's right to discharge an attorney and the prohibition of an absolute ownership interest in a client's claim prior to the performance of all or substantially all the legal services by the attorney. However, this jurisprudence should not be used, as we believe it may have been used here, to circumvent the attorney-client relationship to the disadvantage of an unrepresented plaintiff, particularly where that plaintiff is a seaman. The disciplinary rules give guidance on the present issue as well and are to have no less weight and importance than the disciplinary rules considered in prior jurisprudence dealing with R.S. 37:218. DR 7-104 provides as follows:[3]
"(A) During the course of his representation of a client a lawyer shall not:
(1) Communicate or cause another to communicate on the subject of the representation with a party he knows to be represented by a lawyer in that matter unless he has the prior consent of the lawyer representing such other party or is authorized by law to do so.
(2) Give advice to a person who is not represented by a lawyer, other than the advice to secure counsel, if the interests of such person are or have a reasonable possibility of being in conflict with the interests of his client."
Overlapping and bearing on the interpretation of R.S. 37:218 in this case, there is substantial federal jurisprudence recognizing the special status of seamen and defining the role of the state courts in the application of the law with regard to seamen. Of major importance is Garrett v. Moore-McCormack Co., 317 U.S. 239, 63 S.Ct. 246, 87 L.Ed. 239 (1942) in which the United States Supreme Court rendered an opinion dealing with an injured seaman who executed a full release of his employer for which he was paid $100. Plaintiff claimed his signature on the release was obtained by fraud and misrepresentation and without valid consideration. The court *1122 held that the burden of proof for sustaining a release under the Jones Act is governed by the federal rule that the defendant has the burden of proof. The court reiterated a prior holding that the Jones Act is to have a uniform application throughout the country, unaffected by "local views of common-law rules." Panama R. Co. v. Johnson, 264 U.S. 375, 44 S.Ct. 391, 68 L.Ed. 748 (1924). Therefore, the state court was bound to proceed in such manner that all the substantial rights of the parties under controlling federal law would be protected. The court recites the history by which Congress has sought to safeguard seamen's rights in particular. Justice Story's language on the status of seamen is quoted as follows:
"`They are emphatically the wards of the admiralty; and though not technically incapable of entering into a valid contract, they are treated in the same manner, as courts of equity are accustomed to treat young heirs, dealing with their expectancies, wards with their guardians, and cestuis que trust with their trustees.... If there is any undue inequality in the terms, any disproportion in the bargain, any sacrifice of rights on one side, which are not compensated by extraordinary benefits on the other, the judicial interpretation of the transaction is, that the bargain is unjust and unreasonable, that advantage has been taken of the situation of the weaker party, and that pro tanto the bargain ought to be set aside as inequitable.... And on every occasion the court expects to be satisfied that the compensation for every material alteration is entirely adequate to the diminution of right or privilege on the part of the seamen.' Harden v. Gordon (CC) 2 Mason 541, Fed Cas No. 6047." Garrett v. Moore-McCormack Co., supra at 246-247, 63 S.Ct. at 251.
See also Parodi v. American President Lines, Ltd., 269 F.Supp. 696 (N.D.Cal. 1967).
Explaining this idea further as compared to other types of fiduciary-beneficiary relationships, the court notes that the fiduciary must affirmatively show that no advantage has been taken, and the burden is particularly heavy where there has been inadequacy of consideration:
"The wardship theory has, as was recognized by the courts below, marked consequences on the treatment given seamen's releases. Such releases are subject to careful scrutiny. `One who claims that a seaman has signed away his rights to what in law is due him must be prepared to take the burden of sustaining the release as fairly made with and fully comprehended by the seaman.' Harmon v. United States (CCA 5th 1932) 59 F(2d) 372, 373. We hold, therefore, that the burden is upon one who sets up a seaman's release to show that it was executed freely, without deception or coercion, and that it was made by the seaman with full understanding of his rights. The adequacy of the consideration and the nature of the medical and legal advice available to the seaman at the time of signing the release are relevant to an appraisal of this understanding." Garrett v. Moore-McCormack Co., supra at 247-248, 63 S.Ct. at 252. (Emphasis added).
Furthermore, the law is to be liberally construed to carry out its full purpose, which was to enlarge admiralty's protection to its wards. Warner v. Goltra, 293 U.S. 155, 55 S.Ct. 46, 79 L.Ed. 254 (1934); The Arizona v. Anelich, 298 U.S. 110, 56 S.Ct. 707, 80 L.Ed. 1075 (1936). The Pennsylvania Supreme Court in Garrett had concluded that it could apply its own procedural doctrine and that the placement of the burden of proof was a procedural rather than a substantive question. The United States Supreme Court found this conclusion incompatible with the necessity of preserving all of the substantial admiralty rights. When the Pennsylvania courts were opened to plaintiff to enforce federally created rights, the plaintiff was entitled to the benefit of the full scope of those rights.
The federal courts have consistently applied the reasoning of Garrett. Seamen are wards of admiralty, and releases or settlements involving a seaman are subject to careful scrutiny. Wink v. Rowan Drilling *1123 Co., 611 F.2d 98 (5th Cir.1980), cert. denied 449 U.S. 823, 101 S.Ct. 84, 66 L.Ed.2d 26 (1980). The ultimate concern in cases involving the rights of seamen or their family members is not whether the seaman has received what the court believes to be adequate consideration, but, rather, whether the seaman relinquished his rights with informed understanding of his rights and a full appreciation of the consequences when he executed the release. Stipelcovich v. Sand Dollar Marine, Inc., 805 F.2d 599 (5th Cir.1986). A release is not valid unless it has been executed without deception or coercion. Durden v. Exxon Corp., 803 F.2d 845 (5th Cir.1986). The courts of appeal must be particularly vigilant to guard against overreaching when a seaman purports to release his rights to compensation for personal injuries. Borne v. A & P Boat Rentals No. 4, Inc., 780 F.2d 1254 (5th Cir.1986). Releases signed by seamen are given the most careful scrutiny and the burden is on the shipowner to show that the seaman signed the release with full understanding of his rights and the effect of his action. Halliburton v. Ocean Drilling & Exploration Co., 620 F.2d 444 (5th Cir.1980).
The Louisiana courts have followed this line of reasoning, saying that substantive maritime law controls in state court and the state cannot, by its procedural practice, substantially alter the rights of litigants under substantive maritime law. Lavergne v. Western Co. of North America, Inc., 371 So.2d 807 (La. 1979); Rojas v. Robin, 230 La. 1096, 90 So.2d 58 (1956); Morris v. M/V Creole Belle, 394 So.2d 727 (La.App. 3rd Cir.1981).
In Ray v. Defelice Marine Contractors, Inc., 439 So.2d 1102 (La.App. 5th Cir.1983), cert. denied 469 U.S. 819, 105 S.Ct. 90, 83 L.Ed.2d 36 (1984) a seaman, whose left leg was amputated as a result of a maritime injury, entered into a settlement with his employer for $115,000. Several doctors testified that Ray was an immature, impulsive, nineteen-year-old who had limited judgment and did not have a full appreciation of his injury. Recognizing its obligation to carefully scrutinize the seaman's release and the special relationship a seaman holds as a ward of the court, the court of appeal found that an interpretation of whether Ray had a full understanding of his rights includes not only an intellectual understanding but also an emotional understanding. The court took into account the fact that prior to and including the time of the execution of the release, he did not have his own legal counsel. "Coupled with these factors is the realization Ray released his rights for a very serious injury which, pending proof of liability and numerous other factors, could be valued at a sum several times more than the settlement." Ray, supra at 1105. The court quoted both Justice Story, supra and Garrett, supra, on the concept of seamen as wards of the court. The court concluded:
"This case does not present a situation of a medical miscalculation of the consequences of an injury but, rather, an emotional inability to understand the consequences of an injury. This court does not find a failure to disclose any known material medical facts nor fraud, deception, or coercion. However, when considering the totality of the circumstances, this court finds at the time of the execution of the release, Ray did not have a full understanding of his rights. Therefore, the release ought to be set aside as inequitable." Ray v. Defelice Marine Contractors, Inc., supra at 1105.
The issue here is not so much the impact of the post-settlement dismissal and granting of the defendants' motion for summary judgment on the intervenors' contingent fee contract. Intervenors continue to have a right of action to obtain payment of their fee. However, intervenors' major concern appears to be the method by which the release was obtained and the trial court's action in validating the release. We share this concern.
In the present case, a young seaman entered into negotiations with the defendants before any formal discharge of the intervenors had been made. Defendants knew that plaintiff was represented or had been represented by counsel. Defendants knew of the apparently serious nature of plaintiff's injuries. Plaintiff had been in *1124 intensive care for five-six days after the accident and was hospitalized for two and one-half weeks. He had undergone surgery and still faced further surgery to help repair a hearing deficiency in his left ear, to lessen the partial paralysis on the left side of his face, and to attempt to restore the ability to more fully close his left eye. These specific problems are listed in the release form, evidencing defendants' awareness of the extent of plaintiff's physical injuries. Defendants also knew plaintiff had been under the care of a psychiatrist and a neuropsychologist.
The trial court had before it, at the time of the motion for summary judgment, a report to the defendants by a psychiatrist, Dr. Robert Davis, attesting to plaintiff's serious emotional instability. The trial court also had before it, at the time of the dismissal, a petition in which plaintiff had been represented by the intervenors. There is nothing in the record showing that intervenors were notified of the pending dismissal, nor does the record show that the trial court made any inquiry about the pro se motion to dismiss.
Plaintiff's deposition was also in the record when the summary judgment was granted. This deposition makes clear that there were serious questions as to plaintiff's understanding of what he agreed to in the release. Plaintiff testified that he originally negotiated for $50,000 plus the payment of all of his future surgeries, not just the two surgeries provided for in the written release. Plaintiff also said he asked for and was assured that all of his legal fees would be paid including the costs intervenors had incurred on plaintiff's behalf. These provisions were not included in the written release submitted into the record.
Because a seaman is involved in this case, we find that the court had an obligation to scrutinize the release prior to granting the joint motion for dismissal. Additionally, a motion for summary judgment should be granted if, and only if, the pleadings and related filings show that there is no genuine issue of material fact and that the mover is entitled to judgment as a matter of law. Ray v. Associated Indemnity Corporation, 373 So.2d 166 (La. 1979). In this case, the pleadings and related filings indicate there are genuine issues of material fact which precluded the grant of a summary judgment.
The court of appeal found that the intervenors had no standing before either of the lower courts to urge the invalidity of the plaintiff's receipt and release. We disagree. This court has held that under C.C. P. 2086,[4] a creditor has a right to appeal even though he was not a party to the proceeding. Pennison v. Pennison, 250 La. 303, 195 So.2d 276 (1967). As creditor, the intervenors in this case had a right to appeal.
In addition, under Canon 7 of the Code of Professional Responsibility, EC 7-12 is instructive under the particular facts of this case. EC 7-12 reads as follows:
"Any mental or physical condition of a client that renders him incapable of making a considered judgment on his own behalf casts additional responsibilities upon his lawyer. Where an incompetent is acting through a guardian or other legal representative, a lawyer must look to such representative for those decisions which are normally the prerogative of the client to make. If a client under disability has no legal representative, his lawyer may be compelled in court proceedings to make decisions on behalf of the client. If the client is capable of understanding the matter in question or of contributing to the advancement of his interests, regardless of whether he is legally disqualified from performing certain acts, the lawyer should obtain from him all possible aid. If the disability of a client and the lack of a legal representative compel the lawyer to make decisions for his client, the lawyer should consider all circumstances then prevailing and act with care to safeguard and advance the interests of his client. But obviously a lawyer cannot perform any act or make *1125 any decision which the law requires his client to perform or make, either acting for himself if competent, or by a duly constituted representative if legally incompetent."
Because, as discussed above, the plaintiff is treated as a ward of the court, the intervenors had a right to appeal and call upon the court to protect plaintiff's interests where the plaintiff had entered into the release and dismissal without representation.
Under the circumstances of this case, where an unrepresented seaman is involved, before the trial court could dismiss the case and render a judgment or grant a summary judgment, both of which were based on the adequacy of the compromise and release agreement, the trial court had a duty to scrutinize the release. It was not proper for the trial court to hold, as it did in this case, that the release was satisfactory, enforceable and in plaintiff's best interest without first receiving evidence regarding the plaintiff's condition, the circumstances under which the agreement was reached, and the adequacy of the consideration. The court should look to whether the seaman relinquished his rights with informed understanding and a full appreciation of the consequences when he executed the release. The fact that plaintiff had been represented but was unrepresented at the time of the negotiation of the contract should lead the trial court to investigate further. A seaman is to be treated as a ward of the court, and the defendant has the burden of proof in sustaining a release under federal maritime law.
The judgment dismissing plaintiff's suit and the order granting defendants a summary judgment dismissing the intervention are reversed and remanded for further proceedings consistent with this opinion, all at the cost of defendants.
DENNIS, J., concurs with reasons.
LEMMON, J., dissents and assigns reasons.
DENNIS, Justice, concurring.
I respectfully concur believing that the court could have reached the same correct result by a more direct route. Under a liberal construction of the law in favor of upholding the plaintiff attorney's privilege, which is called for by our respect for the original legislative intent and the traditional rule for interpreting remedial legislation, the privilege should be recognized and enforced against the defendant, because suit had been filed and served upon defendant prior to settlement, thereby giving defendant actual knowledge and notice, regardless of the lack of recordation of a contract with the clerk of court.
As originally enacted, La.R.S. 37:218 allowed an attorney to acquire "an interest in the subject matter" of his client's claim or suit, to enter a contract with his client forbidding settlement of the suit or claim without written consent of the attorney, and, after filing of the contract with the clerk of court, to have any settlement of the claim or suit without the attorney's consent declared null and void, permitting the attorney to proceed with the claim or suit as if no such settlement had been made.
Subsequently, this court adopted the Code of Professional Responsibility to regulate the conduct of members of the bar. The Disciplinary Rules of this code provide that a lawyer shall not acquire a proprietary interest in the cause of action he is conducting for a client, except that he may acquire a lien granted by law to secure his fee or expenses; and that an attorney representing a client in any matter is required to withdraw from employment if he is discharged by his client. Accordingly, this court held that R.S. 37:218 cannot be upheld if interpreted to give the attorney a proprietary interest in his client's cause or to limit the client's freedom to decide whether and how to settle or prosecute the claim. Saucier v. Hayes Dairy Products, Inc., 373 So.2d 102 (La.1979). Therefore, the court elected to construe the statute as authorizing the attorney to obtain as his "interest" only a privilege enabling him to collect, out of the proceeds from the enforcement *1126 of the claim, a fee representing the full value of his services performed. By adopting this construction, the court refused to give effect to to the provisions of the statute which purport to authorize an attorney to exact from his client an agreement permitting the attorney to control settlement, to nullify a settlement made without the attorney's consent, and to proceed with the suit or claim despite such settlement. Id.
Interpreting La.R.S. 37:218 as allowing an attorney to acquire a privilege upon (but not ownership in or right to control settlement or prosecution of) his client's claim or suit, the provisions for filing the employment contract with the clerk of court can serve only the limited purpose of warning persons who because of their lack of knowledge of the attorney's employment in the cause may innocently enter transactions with the plaintiff affecting the attorney's interest, viz., an obligor of the plaintiff who in good faith discharges his liability to the plaintiff, or an innocent third person who, for valuable consideration, enters into a transaction with the plaintiff. There is nothing in the statute which requires us to allow a person with actual knowledge of the attorney's privilege to enter a transaction with the plaintiff prejudicial to the attorney's interest. Such a person has already been given notice of the attorney's employment and interest by methods far superior to that of a filing with the clerk of court in either the forum parish or that of the client's domicile. Specifically, once suit has been filed and service made, the defendant has been given full actual knowledge and undeniable notice of the plaintiff attorney's employment and interest. Even greater knowledge and understanding of the legal implications of the situation must be imputed to the defendant's attorney when he is employed.
This interpretation of the statute is justified for several reasons:
(1) The original legislative aim was to give attorneys complete protection and control by allowing them to acquire an ownership interest in their clients' claims or suits. Although this court must necessarily construe the statute to authorize only a privilege in order to save it, this court should be guided by the central thrust of the legislative intent and construe the legislation liberally in favor of preserving and enforcing the attorney's privilege.
(2) Statutes securing an attorney's lien are ordinarily regarded as remedial in character and should be construed liberally in aid of the object sought by the legislature, which was to furnish security to attorneys, and such a statute should not be interpreted to deprive attorneys of a lien except where such construction is required under express terms. Monsanto Chemical Co. v. Grandbush, 162 F.Supp. 797 (W.D.Ark. 1958); Phillips v. Jones, 355 P.2d 166 (Alaska 1960); Galbreath v. Armstrong, 121 Mont. 387, 193 P.2d 630 (1948); Slayton v. Russ, 205 Ark. 474, 169 S.W.2d 571 (1943); Ifan Realty Corp. v. Klachkin, 154 N.Y.S.2d 104 (Sup.Ct.1956).
(3) This interpretation is consistent with the views prevailing in most jurisdictions. When the attorney files suit against the adversary of his client, the pendency of the suit is generally regarded as sufficient notice, and no additional notification need be given such adverse party. Brooks v. Mandel-Witte Co., 54 F.2d 992 (2d Cir.1932), cert. denied, 286 U.S. 559, 52 S.Ct. 641, 76 L.Ed. 1292 (1932); Petition of Elliott, 208 Mo.Ct.App. 348, 234 S.W. 520 (1921), rev'd. on other grounds, Wabash Railway Co. v. Elliott, 261 U.S. 457, 43 S.Ct. 406, 67 L.Ed. 743 (1923); Clark v. O'Donnell, 68 Colo. 279, 187 P. 534 (1920). Although the attorney's privilege does not operate to interfere with the client's absolute right to settle, Saucier v. Hayes Dairy Products, Inc., 373 So.2d 102 (La.1979); The Golden Star, 82 F.2d 687 (9th Cir.1936); Byram v. Miner, 47 F.2d 112 (8th Cir.1931), cert. denied, 283 U.S. 854, 51 S.Ct. 648, 75 L.Ed.2d 1461 (1931), a settlement made without the attorney's knowledge or consent will not affect an existing privilege of the attorney. Gonzalez y Barredo v. Schenck, 428 F.2d 971 (2d Cir.1970); Paolillo v. American Expert Isbrandtsen Lines, Inc., 305 F.Supp. 250 (S.D.N.Y.1969). The great majority of jurisdictions hold that a defendant who settles with plaintiff without the knowledge or *1127 consent of plaintiff's attorney does so at his own risk as to the attorney's lien, especially where a cause of action actually existed between the parties to the cause and there was actual notice of the attorney's lien. Katopodis v. Liberian S/T Olympic Sun, 282 F.Supp. 369 (E.D.Va.1968); Nickel Rims Mines Limited v. Universal-Cyclops Steel Corp., 202 F.Supp. 170 (D.N.J. 1962); Camp v. U.S. Fidelity & Guaranty, Co., 42 Ga.App. 653, 157 S.E. 209 (1931); In Re Reisfeld, 187 A.D. 223, 175 N.Y.S. 365, modified on other grounds, 227 N.Y. 137, 124 N.E. 725 (1919). Virtually all courts protect the lien of an attorney against a collusive settlement of litigation in fraud of such a lien. Katopodis v. Liberian S/T, 282 F.Supp. 369; Sachs v. Klien, 154 A.2d 134 (D.C.1959); Mabry v. Knabb, 151 Fla. 432, 10 So.2d 330 (1942); In Re Werkman's Will, 122 W.Va. 583, 13 S.E.2d 73 (1940); Wagner v. Sariotti, 56 C.A.2d 693, 133 P.2d 430 (Cal.App. 1st 1943). Further, a settlement made at the instigation of the defendant's attorney, without the knowledge of the plaintiff's attorney, and without provision for his compensation, is viewed with suspicion. Falconio v. Larsen, 31 Or. 137, 48 P. 703 (1897). The mere fact an action is settled without the consent of plaintiff's attorney, and with inadequate consideration, is considered evidence of bad faith. Jackson v. Stearns, 48 Or. 25, 84 P. 798 (1906).
(4) This interpretation is consistent with the holdings if not all of the dicta in our prior decisions, as none have involved enforcement of an unrecorded privilege against a defendant against whom suit had been filed and served as does the present case. In Calk v. Highland Constr. & Mfg., 376 So.2d 495 (La.1979), the court permitted an attorney to enforce his unrecorded privilege on settlement proceeds against his client and a seizing creditor of the client as long as the attorney asserted his claim by intervention prior to disbursement of the funds. A more cogent justification is that the client had actual knowledge of the attorney's fee contract prior to the seizure because he was party to the fee contract, and the seizing creditor had not been prejudiced by the failure to record the privilege because the creditor did not advance funds or rely upon the records to its detriment in connection with the seizure. In Scott v. Kemper Ins. Co., 377 So.2d 66 (La.1979) the court's statement that enforcement of an attorney's privilege against the defendant is dependent on prior recordation of the contract was unnecessary to the decision because the attorney had in fact recorded his contract prior to the settlement. Mere dicta cannot constrain us from a proper reconciliation of the interests here. Further, Scott v. Kemper is concerned with enforcement of a privilege against a client; even its dicta does not inhibit our use of the statutory interpretation set forth above to enforce the attorney's privilege with respect to a defendant against whom suit had been filed and upon whom service had been made prior to the settlement.
In conclusion, I respectfully concur, but I would adopt the foregoing interpretation of La.R.S. 37:218, hold that the intervenor plaintiff attorney may enforce his charging privilege against the defendant, which had been sued and served in this case prior to the settlement, and remand the case for further proceedings.
LEMMON, Justice, dissenting.
If plaintiff had joined in the demand to annul the compromise, I would agree that the trial court erred in granting a summary judgment which purported to approve the release. However, plaintiff did not assert such a demand (which is the reason that the summary judgment, if affirmed, would not bar by res judicata the pending action for nullity of the compromise that plaintiff, through rehired counsel, has filed in federal court). The problem in this case is that the demand for nullity was filed in the trial court by plaintiff's then discharged counsel.[1]
*1128 An attorney, who has been discharged after representing a party under a contingent fee contract, has no real and actual interest in attacking a compromise and therefore has no right of action to assert the invalidity of the compromise, even under the compelling facts alleged to have occurred in this case. Obviously the party himself has a right of action to attack a compromise. Even if the alleged conduct in the present case gave rise to a cause of action for nullity of the compromise, the right of action vests solely in the plaintiff.
I have not seen any argument which suggests that the plaintiff in this case will not be adequately protected by his right to file suit to annul the compromise or which requires the extraordinary action taken by the majority in this case. Once the plaintiff is adequately represented and the parties are properly aligned, the court in which an action to annul is filed can consider any undue influence or unacceptable conduct which may have occurred in the confection of the compromise. Furthermore, any unethical behavior by a Louisiana attorney can be considered in the appropriate disciplinary proceedings. Finally, intervenors still have a right of action to seek recovery of their fee from these defendants or from the plaintiff, whether or not the plaintiff decides to pursue an action to annul the compromise.
NOTES
[1] On November 5, 1987 plaintiff entered into a second contingent fee contract with intervenors, and on November 16, 1987 intervenors filed a suit in federal court, Eastern District of Louisiana, alleging nullity of the settlement agreement and seeking damages.
[2] R.S. 9:5001 is the counterpart of R.S. 37:218 which grants attorneys a privilege "... for the amount of their professional fees on all judgments obtained by them, and on the property recovered thereby ..."
[3] The Rules of Professional Conduct replaced the former Code of Professional Responsibility effective January 1, 1987. However, the DR 7-104 quoted here was in effect at the time of the activities involved in this case. The new rules which replaced DR 7-104 are 4.2 and 4.3. The new rules incorporate the old rules but add the following provision in 4.2: "A lawyer shall not effect the prohibited communication through a third person including the lawyer's client."
[4] C.C.P. 2086 reads as follows: "A person who could have intervened in the trial court may appeal, whether or not any other appeal has been taken."
[1] The majority misses the mark in concluding that intervenors had the right to appeal the dismissal of the principal demand under La.C. C.P. art. 2086. Intervenors had no right of action to assert the invalidity of the compromise either by principal demand, by intervention or by appeal.