Judgment rendered January 11, 2023.
Application for rehearing may be filed
within the delay allowed by Art. 2166,
La. C.C.P.

No. 54,830-CA

COURT OF APPEAL
SECOND CIRCUIT
STATE OF LOUISIANA

* * * * *

F. Q. HOOD, JR., APLC, AND F. Q.          Plaintiffs-Appellants
HOOD, JR.

versus

MARCHALLICE ASHTON,                       Defendants-Appellees
SAMUEL ASHTON AND
LIBERTY MUTUAL INSURANCE
COMPANY

* * * * *

Appealed from the
First Judicial District Court for the
Parish of Caddo, Louisiana
Trial Court No. 624,964

Honorable Ramon Lafitte, Judge

* * * * *

FURNISS QUINN HOOD, JR.                    Counsel for Appellants


PIPES, MILES, BECKMAN, LLC                 Counsel for Appellee,
By: Henry Minor Pipes, III                 Liberty Mutual Insurance
     Patrick J. Lorio                      Company

AUDRIUS MONIQUE REED                       Counsel for Appellees,
                                           Marchallice Ashton and
                                           Samuel Ashton

* * * * *

Before STONE, ROBINSON, and MARCOTTE, JJ.

**ROBINSON, J.**

In this suit by an attorney to recover attorney fees and costs under a contingent fee contract from an insurer who issued a settlement check which designated only the attorney's former client as payee, the attorney appeals a judgment granting the insurer's motion for summary judgment, denying his motion for summary judgment, and dismissing all his claims against the insurer. Finding that the trial court erred in denying the attorney's motion for summary judgment and in granting the insurer's motion for summary judgment, we reverse the judgment and remand this matter to the trial court.

**FACTS**

On December 24, 2017, Marchallice Ashton ("Ashton") was driving her vehicle when it was struck by a vehicle driven by Jaerika Carr. Liberty Personal Insurance Company ("Liberty") had issued a policy of automobile liability insurance to Carr with bodily injury policy limits of $25,000 per person.[1]

On January 10, 2018, Ashton entered into a contingency fee contract ("contract") with F.Q. Hood, Jr., a Professional Law Corporation ("Hood"). Hood's fee pursuant to the contract was 25% of the total amount recovered. Ashton authorized Hood to pay all medical bills and related expenses from the amount of any settlement before remitting Ashton's portion. Hood agreed to advance the costs and expenses necessary to prosecute the claim, with Hood being reimbursed from Ashton's portion of recovery after the contingency fee was calculated. The agreement stated that Hood would

---

[1] Liberty was incorrectly named as "Liberty Mutual Insurance Company" in the petition.

have a lien on the claim, suit, or recovery pursuant to La. R.S. 37:218. A case-funding addendum was also executed by Ashton and Hood on January 10, 2018. The next day, Hood sent a letter to Liberty's representative Monique Sasso to notify Liberty of his representation of Ashton.

On November 27, 2018, Ashton signed a form authorizing Hood to settle her claim against Liberty to the policy limits of its liability coverage. No lawsuit had been filed in the matter. On November 29, 2018, Hood's paralegal, Adrienne Nunnery, emailed Sasso to inform her that Ashton had authorized them to accept the policy limits of $25,000. Nunnery asked that Sasso forward the settlement check and paperwork when convenient. Sasso replied with a question about Ashton's Medicare eligibility status. On December 3, 2018, Sasso emailed Nunnery that the check and release would be issued that day. A copy of the release was attached, and Sasso noted that she would follow up on the release.

On December 3, 2018, Liberty issued a $25,000 check made payable to Hood and Ashton. That check was never signed by Ashton and became stale-dated.

On July 31, 2019, Nunnery emailed Sasso that she wanted to check on the status of the stale settlement check that she had returned to Sasso on July 9 for it to be reissued. Sasso replied on August 6 that the payment had been issued per her conversation with a representative in Hood's office for the same amount and drafting instructions as had been previously issued.

On August 6, 2019, Liberty issued a second check for $25,000 made payable to Hood and Ashton. This check was also never signed by Ashton. Hood wrote to Ashton on October 4, 2019, that he was withdrawing his

2

representation, citing her refusal to sign the two settlement checks. He informed Ashton that he had borrowed $22,731.17 from a bank to cover her expenses. The contract was recorded in Caddo Parish on October 4, 2019.

On October 18, 2019, Ashton faxed to Sasso a note and Hood's withdrawal letter. The cover sheet for the fax stated it was regarding "proof that Mr. Hood is no longer my counsel." The cover sheet also stated that "Whatever check is issued needs to be made out in my name only." Ashton wrote in the note that she did not owe any money to Hood, she did not give him permission to take out any loans in this matter, and she was now representing herself.

On October 29, 2019, Liberty sent a settlement check for $25,000 to Ashton that was payable to her alone. Liberty would later file a motion to enforce the settlement agreement when Ashton cashed the check without returning the signed release.

On December 12, 2019, Ashton filed suit against her UM insurer, Scottsdale Insurance. Hood intervened in that lawsuit on March 10, 2020.

On February 20, 2020, Nunnery emailed Sasso that they were just informed that a settlement check for $25,000 had been sent directly to Ashton without Hood's name on it. Nunnery wanted to know why this had been done. She added that Hood's office had received a call from Liberty asking about Hood's lien, which Hood's office confirmed was for 25% plus expenses in the amount of $22,086.27, so they were under the impression that they would be receiving payment from Liberty.

On July 20, 2020, Hood filed a petition to enforce the lien for attorney fees, medical expenses, and costs against Ashton, her husband, and Liberty.

3

He sought his attorney fee, expenses of $23,087.96, and monthly interest that was accruing.

On August 28, 2020, Liberty filed an exception of no cause of action in which it argued that Hood had no cause of action against it because there was no recorded lien under La. R.S. 37:218 when the claim was settled. Liberty further argued that Hood's remedy is against Ashton, with whom he has contractual privity. Moreover, Hood had intervened in Ashton's UM claim and could recover his fee and expenses from her UM carrier. Liberty's exception was overruled on December 28, 2020.

On September 2, 2021, Hood filed a motion for summary judgment. He argued that the facts needed to decide summary judgment were undisputed; instead, the dispute surrounded the interpretation of La. R.S. 37:218 and when the agreement had to be recorded to perfect the lien against Liberty. Among the exhibits submitted in support of the motion were: (i) the agreement; (ii) his letter to Liberty notifying it of his representation of Ashton; (iii) the case-funding addendum; (iv) the November 29, 2018 email from Nunnery to Liberty stating that Ashton authorized Hood to accept the policy limits of $25,000; (v) the settlement authorization form; (vi) the first and second checks; (vii) Hood's termination of representation letter; (viii) Ashton's fax to Liberty; (ix) an affidavit from Kristin Dahl; and (x) an excerpt from Nunnery's deposition.

Kristin Dahl testified in her affidavit that: (i) she was employed by Liberty as a senior claims resolution specialist; (ii) neither Hood nor anyone from his firm informed Liberty that Hood's name was to be included on the settlement check; (iii) Liberty included Hood's name on the initial

4

settlement check because Liberty's records reflected that Hood was representing Ashton at the time; (iv) when Liberty reissued the check to Ashton alone on October 29, 2019, it had not received a copy of the contingency fee agreement; (v) Liberty's business records reflected that Hood did not inform Liberty of the contingency fee agreement until a telephone call with Nunnery on December 10, 2019; and (vi) Liberty's business records also reflected that Hood did not inform Liberty that he was seeking payment from Liberty for Ashton's claim until February 20, 2020, when Nunnery sent the email to Liberty.

Hood testified in his affidavit that when Nunnery spoke with a Liberty adjuster on December 10, 2019, Liberty wanted to know about his fee and expenses, but Liberty did not tell Nunnery that a check had been sent to Ashton without his name on it in October. He also testified that on or about February 20, 2020, he found out from Ashton's second attorney that she had received and negotiated a check from Liberty. According to Hood, his fee for handling the Ashton matter is $6,250, and his expenses, costs, and advances from the Ashton matter totaled $24,431.19, with interest accruing daily from the loans to fund the case.

On August 26, 2021, Liberty filed its own motion for summary judgment. Liberty argued that it was undisputed that Ashton settled her claim on December 3, 2018, but it was not until October 4, 2019, that Hood recorded the contract and perfected the lien. Liberty contended that an attorney fee lien under La. R.S. 37:218 is not effective against third parties until it is recorded. Liberty maintains that because there was no recorded contract at the time of settlement in December of 2018, Hood's remedy

remains against Ashton, with whom he has contractual privity, or against Scottsdale. Submitted in support of Liberty's motion were: (i) Liberty's cross-claim; (ii) Hood's deposition; (iii) Hood's petition; (iv) Nunnery's deposition; and (v) Dahl's affidavit.

Hood testified at his deposition that in his normal practice, he would not have sent the contract to Liberty before the December 2018 settlement agreement, but would normally send a fee contract to an insurance company when he had some sort of problem with a former client. He acknowledged that Nunnery did not tell Liberty that his name needed to be on the settlement check. However, he could not recall if before the first check was issued, anyone at his firm had told Liberty that his name needed to be on the settlement check, but he was sure it was noted somewhere since his name was put on the check. Hood explained that Ashton refused to sign the first check because she was going to receive little money from that check due to the fact the costs and fee were more than $25,000. He withdrew from representing Ashton not only because she would not sign the check, but also because she refused to give him any kind of settlement authority for the UM claim. Hood believed that his receptionist, Debra Carr, spoke to an adjuster when they called in October to ask about fees and expenses, but he was not sure about the date. He had nothing to prove that anyone from his firm contacted Liberty about the lien or fees owed prior to the reissuance of the settlement check in October 2019.

Nunnery testified at her deposition that she is Hood's only paralegal. She could not specifically recall telling Liberty to include Hood's name on the settlement check or ever sending the contingency fee contract to Liberty.

She explained that Liberty would typically include Hood's name on the check because he was the attorney. Nunnery could not remember how Hood or his firm found out that the check had been reissued in Ashton's name only. She also could not recall telling Liberty prior to Liberty reissuing the check to Ashton that Hood had a lien on the settlement proceeds. Nunnery testified that she spoke to Jennifer Stearns, a Liberty adjuster, on December 10, 2019, about the reissuance of the check in Ashton's name only. During that conversation, she told Liberty that Hood had a lien on the settlement proceeds. She thought that was possibly the first time that she mentioned the lien to Liberty. Before December 10, 2019, their receptionist took a phone call from Liberty asking about Hood's lien and expenses, and she gave the receptionist the information to give to them. She was unsure if that call took place before Liberty issued the check in Ashton's name only in October of 2019.

Nunnery could not remember when they learned the check was sent directly to Ashton, but she believed it was closer to February 20, 2020. The reference in the February 20 email about them receiving a call from Liberty asking about Hood's lien is in reference to Liberty calling the receptionist.

Liberty filed its opposition to Hood's motion for summary judgment on November 17, 2021. Attached to Liberty's opposition were: (i) its affirmative defenses, answer, and cross-claim; (ii) Hood's deposition; (iii) Hood's petition to enforce the lien; (iv) Nunnery's deposition; (v) Kristin Dahl's affidavit; and (vi) Ashton's fax to Liberty, her October 18, 2019 note, and Hood's withdrawal letter.

In its reasons for judgment, the trial court stated that the issue is whether or not the third check constituted a new settlement or compromise. The court concluded that the case was settled on December 3, 2018, not when the check was reissued on October 29, 2019. Thus, the contract was not recorded at the time of the settlement. Accordingly, the trial court denied Hood's motion for summary judgment and granted Liberty's motion for summary judgment.

**DISCUSSION**

Hood argues on appeal that the trial court failed to correctly understand La. R.S. 37:218 because he timely recorded the agreement before Liberty disbursed the settlement proceeds directly to Ashton. He avers that the court erred as a matter of law when it interpreted La. R.S. 37:218 to require that he had to file the contract before the settlement was reached in order to create a lien or privilege to protect his fee. He argues that La. R.S. 37:218 does not require that the contract be filed or recorded prior to settlement, but only that it be filed or recorded prior to the disbursement of settlement proceeds.

Liberty counters that La. R.S. 37:218 requires a contingency fee contract to be recorded at the time of settlement to be enforceable against third parties like Liberty. Because there was no recorded contract between Ashton and Hood when her claim was settled on December 3, 2018, Hood's sole remedy remains against Ashton. Liberty reissued the settlement check as requested by Ashton because there was no recorded contract or perfected attorney fee lien at the time of settlement. The settlement authorization form did not require Hood's inclusion on the check; the only settlement term was

8

the amount.  When Nunnery emailed Liberty on November 29, 2018, she did not inform Liberty of the contingency fee contract, and there was no notification from Hood or any other employee of his.  Hood did not notify Liberty after he recorded the contract.

A summary judgment is reviewed on appeal *de novo*, with the appellate court using the same criteria that govern the trial court's determination of whether summary judgment is appropriate, *i.e.*, whether there is any genuine issue of material fact, and whether the movant is entitled to judgment as a matter of law.  *Samaha v. Rau*, 07-1726 (La. 2/26/08), 977 So. 2d 880.  A motion for summary judgment shall be granted if the motion, memorandum, and supporting documents show that there is no genuine issue as to material fact and that the mover is entitled to judgment as a matter of law.  La. C.C.P. art. 966(A)(3).

Concerning contingency fee contracts between attorneys and their clients, La. R.S. 37:218 states:

A. By written contract signed by his client, an attorney at law may acquire as his fee an interest in the subject matter of a suit, proposed suit, or claim in the assertion, prosecution, or defense of which he is employed, whether the claim or suit be for money or for property.  Such interest shall be a special privilege to take rank as a first privilege thereon, superior to all other privileges and security interests under Chapter 9 of the Louisiana Commercial laws.  In such contract, it may be stipulated that neither the attorney nor the client may, without the written consent of the other, settle, compromise, release, discontinue, or otherwise dispose of the suit or claim.  Either party to the contract may, at any time, file and record it with the clerk of court in the parish in which the suit is pending or is to be brought or with the clerk of court in the parish of the client's domicile.  After such filing, any settlement, compromise, discontinuance, or other disposition made of the suit or claim by either the attorney or the client, without the written consent of the other, is null and void and the suit or claim shall be proceeded with as if no such settlement, compromise, discontinuance, or other disposition has been made.

9

B. The term "fee", as used in this Section, means the agreed upon fee, whether fixed or contingent, and any and all other amounts advanced by the attorney to or on behalf of the client, as permitted by the Rules of Professional Conduct of the Louisiana State Bar Association.

While recordation of an attorney's fee contract under La. R.S. 37:218 is not necessary for enforcement of the contract between the attorney and his client, the contract must be recorded to be effective against third parties. *Breeden v. Crumes*, 2011-1098 (La. App. 4 Cir. 4/4/12), 102 So. 3d 133, *writ denied*, 12-1091 (La. 9/12/12), 98 So. 3d 312.

In *Scott v. Kemper Ins. Co.*, 377 So. 2d 66 (La. 1979), a discharged attorney sought to nullify the settlement made by his former client with new counsel. Following his discharge, the attorney filed the contingent fee contract in accordance with La. R.S. 37:218 and also filed a petition for intervention in his client's pending lawsuit. After the case was settled, the attorney supplemented his petition to pray that the settlement be declared null and void. The Louisiana Supreme Court considered whether the last sentence of La. R.S. 37:218 may be applied literally. The Supreme Court determined that it could not, finding that the attorney had no right to interfere with or nullify the settlement.

The Supreme Court also considered what an attorney's rights are with respect to his fee in that situation. It stated:

We have already said that R.S. 37:218 affords the attorney a privilege on the proceeds of the settlement for payment of the fee which he has earned, and that where the settlement funds have not been disbursed, that privilege attaches in preference to the right of the client's seizing creditor, even where the contract is not recorded. *Calk v. Highland*, [376 So. 2d 495 (La. 1979)]. See also R.S. 9:5001 for similar treatment of the proceeds from judgments[.]

Beyond this however, may the attorney prevent settlement funds from being disbursed to his prejudice.

As we said in *Calk*, the legislative intent in passing R.S. 37:218 was to afford the contingency fee attorney comparable rights relative to settlements which he has relative to judgments and their proceeds. R.S. 9:5001. And while, for reasons above stated, we can not constitutionally apply R.S. 37:218's concluding sentence literally, we can apply it so as to effect its purpose within permissible bounds.

The obvious intent of R.S. 37:218 is to prevent a client's discharging an attorney and thereby depriving the attorney of his earned fee. Therefore, if the attorney with a written contingency fee contract bearing the no consent stipulation "file(s) and records it with the clerk of court in the parish in which the suit is pending . . .", then *a defendant who disburses the settlement proceeds without ascertaining and paying the fee to which the attorney is due, will do so to his prejudice*. The extinguishing effect of the settlement will therefore be suspended, as the Court of Appeal determined in this case, until recognition and payment of the fee to which the attorney is entitled, determined in accordance with the principles established in *Saucier*.

Unlike the situation in *Calk*, where recordation of the contingency fee contract is irrelevant in a contest between an attorney and the client's creditor, imposition of an obligation upon the client's obligor in the suit to retain settlement funds until determination of fee entitlement, is dependent upon the attorney's full compliance with R.S. 37:218, including the recordation of the contract as stipulated therein.

*Id.*, 377 So. 2d at 70 (emphasis added, citations omitted).[2]

Under the rationale presented in *Scott*, we conclude that Hood fully complied with La. R.S. 37:218 and perfected his lien in the settlement proceeds against Liberty when he recorded the contract prior to Liberty disbursing the settlement proceeds.

---

[2] La. R.S. 9:5001(A) states that a "special privilege is hereby granted to attorneys at law for the amount of their professional fees on all judgments obtained by them, and on the property recovered thereby, either as plaintiff or defendant, to take rank as a first privilege thereon superior to all other privileges and security interests under Chapter 9 of the Louisiana Commercial Laws."

We also note the Supreme Court's analysis in *Neely v. Hollywood Marine, Inc.*, 530 So. 2d 1116 (La. 1988). On May 13, 1985, Neely hired a law firm to represent him under a contingency fee contract after he was injured in a maritime accident on a Hollywood Marine vessel. The firm filed a Jones Act and general maritime suit on his behalf in state district court on June 13, 1985. Neely ended their representation on November 19, 1985. Neely, who was unrepresented, reached a settlement with Hollywood Marine on November 22, 1985. Three days later, the firm intervened in his lawsuit to recover its expenses and to enforce the fee agreement. The firm also simultaneously recorded the contract in conformity with La. R.S. 37:218. On December 12, 1985, the trial court dismissed Neely's lawsuit on a joint motion by Neely and Hollywood Marine. Hollywood Marine filed a motion for summary judgment seeking to dismiss the intervention. Hollywood Marine argued that the contingency fee contract was not filed timely since it was filed after the settlement agreement had already been completed. The firm amended its petition for intervention seeking to annul the settlement agreement. The firm alleged that Neely was unrepresented and the amount paid by Hollywood Marine was inadequate. The firm also asserted that the dismissal of Neely's lawsuit was null and void because it was entered after they recorded the contract and filed the intervention.

Finding that the fee contract was not timely filed, the trial court granted the motion for summary judgment and dismissed the intervention. The court of appeal affirmed. The Louisiana Supreme Court reversed the judgment dismissing the intervention and granting the summary judgment. After recognizing that settlements involving seamen are subject to strict

scrutiny, and the trial court had a duty to scrutinize the release, the Supreme Court concluded that it was not proper for the trial court to find the settlement was satisfactory and in Neely's best interest without conducting an evidentiary hearing to examine Neely's condition, the circumstances of the settlement, and the adequacy of the consideration.

Although the trial court's neglect in not closely scrutinizing the settlement was the basis for the reversal, the Supreme Court did not find that the firm's failure to record the contract prior to the settlement was a basis to grant summary judgment:

> *The issue here is not so much the impact of the post-settlement dismissal and granting of the defendants' motion for summary judgment on the intervenors' contingent fee contract. Intervenors continue to have a right of action to obtain payment of their fee.* However, intervenors' major concern appears to be the method by which the release was obtained and the trial court's action in validating the release. We share this concern.

*Id.*, 530 So. 2d at 1123 (emphasis added).

In reaching its conclusion that Liberty was entitled to summary judgment in its favor, the trial court relied on *Law Office of John D. Sileo, LLC v. Kruse*, 17-474 (La. App. 5 Cir. 2/21/18), 239 So. 3d 1057, *writ denied*, 18-0469 (La. 5/11/18), 241 So. 3d 312. Liberty cites *Sileo* in its appellate brief for the argument that a discharged attorney does not have an actionable claim against a settling defendant unless the contingency fee contract is recorded prior to the settlement.

Sileo filed a federal tort suit on behalf of his clients. Sileo represented them under a contingency fee contract. Sileo's representation was terminated by his clients on February 9, 2015. Because Sileo was still counsel of record, he received notice from the federal court on June 30,

13

2015, that a settlement had been reached in his former clients' case and the matter had been placed on the inactive docket. On July 7, 2015, Sileo attempted to intervene in the now inactive suit to recover his fee and expenses, but the petition for intervention was not considered filed since Sileo had not obtained the required permission to intervene. On July 10, 2015, Sileo filed a motion to reinstate the case to the active docket. That motion was denied. Sileo took no further action in federal court.

On September 9, 2015, Sileo recorded the fee contract in Jefferson Parish. On May 31, 2016, an order dismissing all claims was entered by the federal court pursuant to the settlement. Five months later, Sileo sued his former clients to recover attorney fees and expenses pursuant to their contingency fee contract. Sileo also filed a claim for conversion against the successor attorney for the same fees and expenses. The trial court granted the defendants' declinatory and peremptory exceptions, including the exception of no right of action, and dismissed Sileo's lawsuit.

Concluding that Sileo had no right of action, the appellate court affirmed the judgment. The appellate court stated that Sileo forfeited his right to pursue a claim against the former clients when he failed to comply with La. R.S. 37:218 and timely file or record the contingency fee contract prior to the settlement of their case in federal court. Emphasizing Sileo's missteps and lack of action in federal court prior to settlement, the appellate court concluded that Sileo failed to take the necessary steps to protect his rights under the contingency fee contract before such rights were lost.

As noted earlier in this opinion, Liberty cites *Sileo* for the argument that the contract must be recorded prior to the settlement to be effective

against third parties.  While we disagree with the *Sileo* court's conclusion that a discharged attorney forfeits his right to pursue a claim for his fee against a former client by not complying with La. R.S. 37:218, we find the *Sileo* court's analysis of whether the successor attorney is liable to be instructive.  The *Sileo* court concluded that because of Sileo's failure to timely act, he also forfeited any rights he may have had to pursue a claim for attorney fees and costs against the successor attorney.  The court stated:

> As noted above, in *Ferguson*, *supra*, we held that even though a discharged attorney forfeits his right to pursue a claim against his former client when he fails to timely comply with La. R.S. 37:218, he may still have a claim against the successor attorney if, prior to settlement, he *notifies* the successor attorney of his intention to assert his rights under the contingency fee contract, and he was fired without cause.  We determined that the discharged attorney's filing of an intervention prior to settlement of the underlying claim constitutes *sufficient notice* to the successor attorney of his intent to assert his rights.

*Sileo*, 17-474 at pp. 11-12, 239 So. 3d at 1065 (Citation omitted).

The court went on to state that notice to the successor attorney was not limited to an intervention: "[W]e find that, by Sileo's failure to timely file a petition of intervention or otherwise notify [the successor attorney] in some manner of its intent to assert its rights under the contingency fee agreement *prior to the settlement* of the Kruses' federal court action, it forfeited its right to do so thereafter." *Id.*, 17-474 at 13, 239 So. 3d at 1066.

In *Ferguson v. West Jefferson Levee Dist. Bd. of Com'rs*, 96-385 (La. App. 5 Cir. 11/14/96), 685 So. 2d 273, *writ granted in part and remanded*, 96-3005 (La. 2/7/97), 688 So. 2d 486, the appellate court noted that under *Reis v. Fenasci & Smith*, 93-1785 (La. App. 4 Cir. 4/14/94), 635 So. 2d 1319, an attorney may still have a claim against a successor attorney for attorney fees if subsequent counsel has been notified before settlement of the

15

prior attorney's assertion of rights under an employment contract and if the prior attorney was fired without cause. The *Ferguson* court added that either intervention in the pending suit or filing under La. R.S. 37:218 would have constituted sufficient notice under *Reis*.

In *Reis*, the Fourth Circuit considered that court's earlier opinion in *Murray, Murray, Ellis, Braden & Landry v. Minge*, 516 So. 2d 213 (La. App. 4 Cir. 1987), *writ denied*, 516 So. 2d 369 (La. 1988). In *Murray*, the discharged attorney made a claim for fees directly against the successor attorney despite not complying with La. R.S. 37:218. The *Reis* court stated:

> In *Murray*, *supra*, we considered the issue raised in the instant appeal: whether a discharged attorney who did not intervene in the former client's suit nonetheless has a cause of action to recover attorney fees which can be asserted in a separate action against the successor attorney. In *Murray*, it was undisputed that the successor attorney had, on several occasions, acknowledged the contingency fee contract between the discharged attorney and the client. In addition, the discharged attorney informed the successor attorney that he intended to assert a claim for attorney fees under the contingency fee contract. Some five months later, the successor attorney settled the client's claim without notifying the discharged attorney of the settlement. Because the successor attorney had notice of the discharged attorney's intention to assert his rights under the contingency contract, we held that the discharged attorney had a cause of action to recover attorney fees which could be asserted directly against the successor attorney.

*Id.*, 635 So. 2d at 1321-22.

Under the rationale of *Sileo*, *Reis*, and *Murray*, a third party may have notice outside of the recordation of the contract or even intervention. Liberty had sufficient notice prior to settlement of Hood's representation as best evidenced by their inclusion of Hood as a payee on the first two checks. Liberty should have acted with an abundance of caution by engaging in additional inquiry after receiving the fax from Ashton.

16

In summary, Hood complied with La. R.S. 37:218 when he recorded the contract prior to funds being distributed and established his privilege to the extent of his earned fee and expenses. Furthermore, in light of the circumstances of this case, Liberty also had notice of his representation and possible claim to fees and expenses as shown by his inclusion on the first two checks that Liberty issued following the settlement.

**DECREE**

At Liberty's costs, the judgment granting Liberty's motion for summary judgment and denying Hood's motion for summary judgment is REVERSED. Hood is entitled to summary judgment in his favor against Liberty. The matter is REMANDED to the trial court for further proceedings.